## Peoria Life Association v. Carrie J. Hines et al.

### Gen. No. 4,727.

1. GENERAL ISSUE—*what plea of, puts in issue.* The plea of the general issue puts in issue the policy or contract of insurance, that defendant never contracted at all or in the manner stated in the dec-laration; and also puts in issue whether or not there had been a misjoinder of plaintiffs.

2. INSURANCE POLICY—*to whom cannot be assigned.* A policy of insurance cannot be assigned to one not possessing an insurable in-terest.

3. INSURABLE INTEREST—*what is.* A party who is a creditor of the insured possesses an insurable interest such as will sustain an assignment.

4. INSURANCE POLICY—*who must sue upon.* A suit upon an insurance policy must be brought in the name of the party having the legal title thereto.

Peoria Life Association v. Hines.

5. "For the use"—*effect of use of phrase.* Where a plaintiff "sues for the use" of another named, the words "for the use" serve no other purpose than to give notice to the defendant of the rights of the usee.

6. Incontestable clause—*effect of, upon defense, of false warranties.* The defense that statements made in an application for insurance are warranties and were false, cannot be made to a policy which contains an incontestable clause; the only defense which will defeat such a policy is that of fraud in the procurement.

Action in *assumpsit.* Appeal from the Circuit Court of Peoria county; the Hon. Theodore N. Green, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed April 10, 1907.

Wolfenbarger & May, for appellant.

Joseph A. Weil, F. J. Quinn, I. J. Levinson and Irwin L. Fuller, for appellees.

Mr. Justice Willis delivered the opinion of the court.

This is a suit by appellee, Carrie J. Hines, against appellant, Peoria Life Association, on a policy of life insurance for $500 issued to one Eunice M. Spangler. The declaration consists of one special count with the policy made a part thereof, alleging payment of the premiums, the performance by the insured of all conditions of the policy, the due execution and delivery of the required proofs of death, and the common counts.

Appellant filed to the declaration the plea of general issue, eight special pleas alleging that the basis of the policy was the application therefor, that the statements contained in the application were warranted to be true, that they were false, and thereby the policy became null and void. Another special plea was filed alleging fraud in the silence of the insured as to matters which should have been stated in the application; and two other special pleas alleging that the assignee of the policy had no insurable interest in the life of the insured; and that, therefore, by the alleged assign-

ment, the policy became void. Replications, rejoinders and *similiters* were filed. The plea of the general issue put in issue the policy or contract of insurance, that defendant never contracted at all or in the manner stated in the declaration; and also put in issue whether or not there had been a misjoinder of plaintiffs. Snell v. DeLand, 43 Ill. 323. The special pleas put in issue the statements in the application and their effect; and the replication and *similiter* thereto put in issue their truthfulness or falsity, and whether or not there had been fraud upon the appellant; and the rejoinder to the fifth replication put in issue the clause of incontestability of the policy and its effect on the application. The special pleas as to the incorporation under chapter 73 of the Illinois laws put in issue the assignment to Dr. Weil and whether or not he had an insurable interest in the life of the insured.

Trial was had by jury, and a verdict was returned for plaintiff in the sum of $500. Motions for a new trial and in arrest of judgment were overruled, and judgment was entered on the verdict, from which this appeal is prosecuted.

The facts in this case, briefly stated, are as follows: That appellant on the 30th day of December, 1902, issued to one Eunice M. Spangler a .policy of insurance on her life for the sum of $500, payable, $300 to Carrie J. Smith, her mother, and $200 to Hazel Miller, her daughter; that afterward the policy was changed, and Carrie J. Smith was made the sole beneficiary; that on the 8th day of May, 1903, the insured was sick and needed medical treatment, and wished one Dr. Albert Weil to treat her. Having no money to pay for the medical services she offered to assign an interest of $300 in the insurance policy to Dr. Weil for such services. The mother of the insured, Carrie J. Smith, talked with T. J. Murphy, secretary of appellant's company, and he told her that this could not be done, and to bring Dr. Weil and the policy over to

his office; but the doctor was busy and could not come at that time. Dr. Weil later talked with Murphy in regard to having an interest in the policy transferred to him, and told Murphy that Mrs. Spangler was in bad physical condition, and in need of a surgical operation, and that the only compensation she had to offer was an interest in the policy, and asked Murphy's opinion in regard to it. Murphy thereupon stated to him that the policy was as good as gold, and told Dr. Weil that he could give him a legal assignment, indorsed by the insurance company. Shortly after an assignment was drawn up by Mr. Wolfenberger, one of appellant's attorneys, on the stationery of appellant, and signed, in triplicate; one copy for Dr. Weil, one for appellant, and one to be attached to the policy by the insured and the beneficiary, Carrie J. Smith, transferring to Dr. Weil an interest of $300 in the policy. In pursuance to this assignment of the interest of $300, Dr. Weil rendered services as physician and surgeon to the insured up until the time she died. Insured paid all premiums due on the policy, and appellee complied with the requirements of the policy in regard to proofs of death, etc. On the trial in the Circuit Court the application for the insurance, signed by the insured, the policy itself, the assignment of the part interest to Dr. Weil and parts of articles four and five of the by-laws of appellant, were admitted in evidence.

Dr. Davis was called as a witness for appellant, and testified that he treated insured professionally prior to March, 1902, and that she was suffering from womb trouble caused by child birth; that he operated on her about the first of March, 1902, at the hospital, for ulceration of the womb and found that she had ulceration and laceration of the cervix; that about two weeks afterwards she broke out with positive syphilitic eruptions; that she asked him what the eruption was, and he told her it was syphilis. He further testified that insured had a sore throat, and that her hair fell out, and that in April, 1903, he made an examination

of insured and diagnosed her disease as syphilitic
tumor of the uterus, and again told her it was syphilis.
Dr. Marcy, another of appellant's witnesses, testified
that he had treated insured professionally from July
29 to August 20, 1903, and found her sick in bed with
ulceration of the uterus; that such condition might
have been caused by syphilis, and also that it might
have been caused by something else.

To rebut appellant's evidence plaintiff called Carrie
J. Smith, the mother of the insured, Ella Recher, sister
of the insured, and Mary May, a close companion
of the insured, each of whom testified in substance
that she saw insured in 1902 at the hospital and at her
house, and that there were no eruptions on her arms,
face or body at that time, and that insured did
not complain of sore throat or take any medicine
therefor; and that her hair did not fall out. Dr. Weil
testified in rebuttal that he was familiar as a physician
with the disease of syphilis; that the symptoms of
syphilis are sores on the mouth from two weeks to three
months after the infection; that there are sores on the
tongue; that the hair falls out, and eruptions appear
over the body; that if a person 24 years old is operated
on for lacerated cervix and syphilis develops after, and
if the operation was in March the syphilitic scars would
appear in December and remain from ten to twenty
years; that he treated insured medically almost daily,
and that she did not have any syphilitic scars; that she
suffered from cancer of the womb and hemorrhages;
that syphilis never develops cancer of the womb and
hemorrhages; that when he examined her he found that
she had undergone an operation for lacerated cervix,
and that this is a simple operation and ordinarily not
serious. In his opinion as a medical expert he was
corroborated by two other physicians, Drs. Keith and
Limmer.

Appellant urges that under section 9, chapter 73,
Hurd's Revised Statutes of Illinois, the assignment of
$300 in the policy to Dr. Weil rendered it null and void,

because he had no insurable interest in the insured. It is the law that a policy on the life of a person is not assignable to one with no insurable interest in the life of the deceased, and who could not have taken out a policy in his own name. Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924. It will, therefore, be necessary to ascertain whether or not the evidence in this case discloses an insurable interest of Dr. Weil in the deceased. The fact is that the assignment was made in consideration of the performance of services as physician and surgeon by Dr. Weil to the insured to the amount of $300, and that the interest in the policy was assigned as security for the debt. This shows the relation of debtor and creditor, and that the policy was assigned as collateral security for the debt. A creditor has an insurable interest in his debtor's life. Rittler v. Smith, 2 L. R. A. 844, and cases cited. That a policy can be assigned as security for debt is well settled. See cases cited in note to Johnson v. Alexander, 9 L. R. A. 66; 6 L. R. A. 136, note; Binkley v. Jarvis, 102 Ill. App. 59; 3 L. R. A. (N. S.) 951-953.

Furthermore, appellant is stopped from setting up the defense that the policy became null and void by the assignment to Dr. Weil, for the reason that the evidence discloses that the assignment was made with the consent of appellant company; that Dr. Weil, the beneficiary, and the insured talked the matter over with the secretary of the appellant company before having the contract of assignment drawn; and that this all took place in the office of the appellant company and on appellant's stationery, and by appellant's attorney, and the assignment itself provided for a copy of the same for appellant company. These facts show that there was no fraud or deception designed or practiced upon any one, and that the arrangement was for the purpose of securing the payment of a just debt, and that the company consented thereto.

The policy of the law, independent of statute, is

against assignment of policies to persons having no in-
surable interest in the insured, for the reason that these
transactions are merely speculative . contracts and
wagers on human life.   The evidence in this case shows
that this transaction was not in any way tainted with
these objectionable features.   It is our opinion that Dr.
Weil, if he did not have an insurable interest in de-
ceased, is entitled to receive the proceeds to the amount
of $300 on the theory that the assignment would operate
as a designation, by a mutual agreement of the parties,
of the person who should be entitled to receive the pro-
ceeds when due.   Warnock v. David, 104 U. S. 775, 26
L. Ed. 927.   However, this is unnecessary under our
view of the law that he did have an insurable interest
in the deceased.

It is also claimed that there was a misjoinder of
parties and that the verdict is not proper.   The decla-
ration as amended shows as plaintiff, Carrie J. Hines,
and Carrie J. Hines for the use of Albert Weil.   An
insurance policy is not negotiable either by the common
law or by statute, so as to vest the legal title in the as-
signee.   The suit must be brought in the name of the
party having the legal title to the policy.   The legal
title to the policy in this case was in Carrie J. Hines.
The use of the words "Carrie J. Hines for the use of
Albert Weil," are merely surplusage, and are only
interposed to protect the usee from the claims of the
plaintiff, and serve to give notice to the defendant of
whatever interest the usee may have.   It in no way
concerns appellant that suit is brought in the name of
plaintiff for the use of another.   Atkins v. Moore, 82
Ill. 240; Mutual Life Ins. Co. v. Allen, 113 Ill. App. 96.
As far as the appellant is concerned this suit stands
as though Carrie J. Hines is the sole plaintiff.   We
are, therefore, of the opinion that there is no improper
joinder of parties, and that the verdict rendered is a
proper one.

The main defense in this case is that the statements
made by Mrs. Spangler in the application were warran-

ties and were false, and appellant introduced testimony tending to show that the insured had been afflicted with these diseases or some of them, prior to the time of making her application; but there was also evidence tending to show not only that she was then in good health, but that at the time she made her application she did not know or believe that she had ever been afflicted with any of them in a sensible, appreciable form. Where, although the application for, and the policy of insurance, declares that the statements in the application are warranties, yet, if other parts of the instrument show that a strict warranty was not intended, such parts must govern. It is our opinion that the clause "that this policy shall be incontestable from the date of issue except for fraud," etc., should be construed to mean that the statements in the application were not intended to be warranties, and we do not think that the parties stipulated for the literal truth of every statement made by the insured in her application, or that the company intended to require that, or the insured intended to promise an exact literal fulfillment of all the declarations embodied in the application. The fact that the word "warranty" was used would not of itself make these statements warranties. Whether or not statements are warranties, must depend upon the construction of the entire contract—that is, the application and policy. Here we have one part of this contract apparently stipulating for a warranty, while another part says that "This policy shall be incontestable from the date of issue except for fraud," etc. Therefore, the construction must prevail which protects the insured from the obligation of strict warranty, and it is our opinion that the incontestable clause was placed in the contract to cover any errors or mis statements in the application. A company cannot be permitted in the same papers to say to the insured, to induce him to enter into the contract, that nothing but fraud shall void his policy or that the payment will be contested only in case of fraud, and when the

claim for payment is presented to set up a defense of a breach of warranty. In a case like this, considering the number and character of the inquiries made of the insured, if the answers were all held to be warranties it would in substance be optional with the company whether to pay or not, for it would be a marvel if some flaw could not be found in the application. No intelligent person would knowingly invest his earnings in so precarious a security. Fitch v. The American Popular Life Ins. Co., 17 Am. Rep. 372. The policy in this case could only be contested for fraud. In order to sustain the defense of fraud it is necessary to show, not only that the statements in the application were untrue, but that they were known by the insured so to be, and that the alleged omissions were made intentionally and with fraudulent design.

The incontestable clause would seem to effectually bar any other defense, for if this clause be not altogether a glittering generality, put in for no purpose except to induce men to insure, it would seem that it must cover such misstatements or omissions as are here alleged. No doubt the appellant "held it out as an inducement to insurance, by removing the hestitation in the minds of many prudent men against paying ill-afforded premiums for a series of years; and in the end, and after the payment of premiums, the death of the insured, and the loss of his and the testimony of others, the claimant, instead of receiving the promised insurance, is met by an expensive law suit to determine that the insurance which the deceased had been paying for through many years has not, and never had, an existence, except in name." Wright v. Mutual Life Benefit Assoc., 6 L. R. A. 731.

In view of the fact that the company intended to issue an incontestable policy it should have taken the time necessary, before issuing this policy, to investigate the statements in the application. The evidence of Dr. Davis in regard to the condition of the deceased when he treated her, some time before her taking out the

policy, was such that, if true and uncontradicted, might justify the jury in finding that the policy was fraudulently procured; but appellee produced testimony tending to show that the evidence of Dr. Davis could not be true. The credibility of the witnesses, and the weight to be given to their testimony, was a question for the jury to determine, and they have found adversely to appellant, and we would not be warranted in disturbing the verdict, as the record contains sufficient evidence to support it.

Complaint is made of some of the instructions. It is our opinion that the jury were fully and fairly instructed in regard to the issues in the case, and that the instructions refused were immaterial to the issues.

Finding no reversible error in the record, the judgment is, therefore, affirmed.

*Affirmed.*