FIRST NATIONAL BANK OF BEEVILLE, TEXAS, v. SECURITY MUTUAL LIFE INSURANCE COMPANY OF BINGHAMTON, NEW YORK, Plaintiff in Error.

Division Two, June 25, 1920.

1. **INSURANCE POLICY: Cause of Action.** The petition in this action upon a matured insurance policy, assigned by the insured to a bank, by which the company agreed to pay a designated sum upon its maturity, states a cause of action. Besides, the practice of failing to demur to the petition, but simply objecting to the introduction of any evidence to sustain its allegations, is not to be commended.

2. ———: **Assignment: Cancellation.** Where the insured had the right by the terms of the policy to change the beneficiary, it cannot be maintained that an exercise of that right, without the consent of the named beneficiary, made the assignment void.

3. ———: **Pledge to Secure Debt: Limitations: Personal Right.** The defense of limitations is a privilege personal to the debtor or to those standing in privity to him by inheritance or estate. In an action on an insurance policy, which had been pledged by the insured and his wife to a bank to secure the payment of his debt, the defense that the debt was barred by time and therefore that

the pledge was barred by limitations is not available to the insurance company. Besides, the suit being on the policy, and not on the debt, the defense of limitations is not pertinent to the issues.

4. ———: Assignment: Public Policy: To Pay Existing Debt. A contract by which the insured assigns his life insurance policy to a bank in payment of an existing debt is not against public policy. A purchase of a life insurance policy is held to be against public policy, for that it gives to the purchaser an interest in the death of the insured, only when the purchaser has no insurable interest in the life of the insured and the relation of debtor and creditor between them does not exist. If such relation exists, the assignment is not void, but is at least valid to the extent to which the policy becomes security for the existing debt and for all advances thereafter made by the assignee; the balance, if any, upon maturity of the policy, becoming payable to the beneficiaries originally designated. Besides, if the insurance company fears that some one other than the assignee may set up a claim for the excess above the amount of the assignee's advancements, it should pay the amount due on the policy into court and ask that the various claimants be compelled to interplead for it.

5. ———: Loan: Concealment. Under the allegations in this case the court did not err in making defendant's instruction require the jury to find that the signature of the insured to a loan agreement was obtained by fraudulent "concealments" as well as by "false and fraudulent misrepresentations," and thereby consistent with the instruction given for plaintiff.

6. ———: Loan Agreement: Obtained by Fraud. The evidence in this case is sufficient to support a finding by the jury that a certain loan agreement, alleged to have been executed by the insured, at a time when the amount it states he promised to pay would have simply increased his indebtedness with no corresponding benefit, was obtained by fraud, and that he did not sign it, although an expert on handwriting testified the signature was his.

7. ———: Attorney's Fee: Foreign Contract. In a suit on an insurance contract made in Texas, in which the plaintiff is a resident of Texas, where all the premiums were paid, an allowance of an attorney's fee, no statute of Texas allowing it being either pleaded or proven, cannot be made. The allowance of an attorney's fee relates to the right, and not to the remedy; and if the statute of Texas, in such case, permits a taxing of such a fee, it should be pleaded and proven.

Appeal from Jackson Circuit Court.—*Hon.  Allen  C. Southern,* Judge.

AFFIRMED (*on condition.*)

*Roland Hughes* for plaintiff in error.

(1) There could be no recovery in this case for vexatious delay and attorney's fees. This was a Texas contract, and the penalties imposed by our statute do not extend to the obligations of a Texas contract. Thompson v. Traders Ins. Co., 169 Mo. 12. (2) In an ordinary life insurance policy the beneficiary named in the policy becomes the owner of it the moment it is issued, and the person procuring the insurance cannot by any subsequent act of his, transfer to others the interest of the beneficiary. Splawn v. Chew, 60 Tex. 534; U. S. Casualty Co. v. Kacer, 169 Mo. 301; Blum v. N. Y. Life, 197 Mo. 522. (3) The debt of Kennedy to the bank, to secure which Agnes Kennedy pledged the policy, was barred by Statute of Limitations before her death, and the policy was released from liability. The mere physical possession of the paper gave the bank no rights in it. Cheves v. Anders, 87 Tex. 287; 2 Briefs on Insurance Law by Cooley, 1112. (4) Plaintiff, being a national bank, could neither purchase this insurance policy nor loan money on it. It possibly might hold it to secure the past indebtedness of $1,034.61, if this debt had not been barred by limitation, or the time of payment extended, or the debt canceled and the security thereby released. First Nat. Bank v. First Nat. Bank, 92 Atl. 1076, 247 Penn. 44; McBoyle v. Union Natl. Bank, 122 Pac. 458, 162 Cal. 277. (5) The debt for which Mrs. Kennedy pledged the policy being barred by limitation during her life, the security became released by act of law, and the bank could not sue on the policy. R. S. 1909, sec. 1892; Washington Life Ins. Co. v. Gooding, 19 Tex. Civ. App. 490, 49 S. W. Rep. 123; Vernon's Sayles's Statutes of Texas, art. 5688. (6) Where the wife assigned a policy to secure the debt of the husband the policy stands in the relation of surety for the debtor, and an extension of time or renewal of the note, without the consent of the wife,

released the policy. Allis v. Ware, 28 Minn. 166; 27 Am. & Eng. Enc. Law (2 Ed.), 433; Brant on Suretyship & Guar., secs. 21, 22. The burden would be on plaintiff to show her consent. Touhy v. Woods, 122 Cal. 665; Same case, 55 Pac. 683; Okey v. Sigler, 47 N. W. 911; Same case, 82 Iowa, 94; United States v. McIntyre, 111 Fed. 590. (7) The reply admits that Kennedy signed the note or certificate of loan pleaded in the answer. A party cannot traverse and at the same time confess and avoid. In this respect the reply is ambiguous. Cable v. McDaniel, 33 Mo. 363; Bliss on Code Pld. (2 Ed.) secs. 317, 332; Bredell v. Alexander, 8 Mo. App. 110; Barrett v. Donnelly, 38 Mo. 492; Adams v. Trigg, 37 Mo. 141. The contract of the bank with Kennedy, was against public policy and void. "Public policy will not recognize the transfer of a life policy of insurance to another whose interest is involved in the early death of the insured." Price v. Supreme Lodge, 68 Tex. 361; Tripp v. Jordan, 177 Mo. App. 339; Heusner v. Ins. Co., 47 Mo. App. 343; Ins. Co. v. Richardson, 99 Mo. App. 93; Bruer v. Ins. Co., 100 Mo. App. 627; Jenkins v. Morrow, 131 Mo. App. 288. (8) The petition does not allege facts which show that the insurance money was due. Shaver v. Mercantile Town Mut., 79 Mo. App. 420; Wanschaff v. Masonic Ben. Assn., 41 Mo. App. 206.

*Charles N. Sadler* for defendant in error.

(1) Plaintiff was entitled to recover attorney's fees under Sec. 7068, R. S. 1909. (a) Defendant says it was a Texas contract. Regardless of whether it was a Texas, New York or Missouri contract, there was no pleading or proof that the laws of Texas were different from Missouri, and in the absence of proof it will be presumed that the laws of another state are the same as the laws of the forum. Shelton v. Railroad, 167 Mo. App. 404; Gibson v. Railroad, 225 Mo. 473; Warren v. Lusk, 16 Mo. 102; Selking v. Hebel, 1 Mo. App. 340; Bergner v. Ry. Co., 13 Mo. App. 499; Silver v. Ry. Co., 21 Mo. App. 5;

McDonald v. Ins. Co., 154 Mo. 618; R. S. 1909, sec. 7068; Thompson v. Ins. Co., 169 Mo. 12; Stix v. Ins. Co., 175 Mo. App. 171; Coscarella v. Ins. Co., 175 Mo. App. 130. (b) This being a life insurance policy executed by a New York Company in New York upon the life of a man then living in Texas, and sued upon in Missouri, the laws of Missouri are applicable. Beneficiaries in life insurance policies providing for change of benefici- ary do not obtain such a vested interest that it cannot be ousted. (2) Mrs. Kennedy joined in the assign- ment of this policy, the policy provides in case of her death it shall be payable to A. G. Kennedy's estate, and she was dead long before this policy matured or suit brought. 25 Cyc. 892. Even if the debt was barred this defendant could not raise the point. It is a personal one, and if A. G. Kennedy did not want to avail him- self of it this defendant could not avoid its just debts in such a manner. Columbia Ave. Sav. Fund Co. v. Strawn, 93 Tex. 48. (3) Plaintiff did not buy the policy sued on, nor did it loan money on it; it did not violate any na- tional bank act. It had a perfect right to take an assign- ment of the policy as collateral security for its past due debt, and then in order to protect its security had a right to pay the premiums. This is all it did under the testi- mony. McBoyle v. Union Natl. Bank, 122 Pac. 458; 5 Cyc. 591. Even if it had bought the policy, or loaned money on it, this defendant could not raise that question. First Natl. Bank v. Wilson, 165 Pac. 859; Merchants Natl. Bank v. Weston, 168 Pac. 587; 5 Cyc. 590; Wherry v. Hale, 77 Mo. 20; Thornton v. Natl. Exchange Bank, 71 Mo. 221; Matthews v. Skinker, 62 Mo. 329. (4) The reply does not admit that Kennedy signed the so-called note, but expressly denies it. Even if the reply was am- biguous it is too late for plaintiff in error to complain now, and it could cut no figure in this case.

WILLIAMSON, J.—The First National Bank of Beeville, Texas (hereinafter called the Bank), brought suit in the Circuit Court of Jackson County, Missouri, against the Security Mutual Life Insurance Company

of Binghamton, New York (hereinafter called the Insurance Company), to recover an amount claimed to be due upon a life insurance policy issued by the company upon the life of Albert G. Kennedy. Plaintiff recovered a judgment in the sum of $7315.14 and $750 for attorney's fees. The company has duly brought the cause to this court upon a writ of error.

The suit grew out of the following facts: Albert G. Kennedy held a life insurance policy, nine years old, amount not stated and cash surrender value not disclosed, issued by the defendant. He was indebted to plaintiff in the sum of $1032.65. The policy was pledged for the payment of this debt. In August, 1905, at the solicitation of defendant, Kennedy took out the policy here in suit for $8000 on the twenty-payment plan. For the new policy, he surrendered the old one, and, so defendant says, gave his written promise to pay to defendant $3301.52, with interest at six per cent per annum, secured by a lien upon the new policy. The plaintiff, at defendant's request, consented to surrender the old policy and accept the new one in lieu thereof, and for eleven years paid the annual premium of $488.96. But plaintiff, for nine years after the new policy was issued, did not know of the agreement that the new policy should stand subject to defendant's lien for $3301.52. Neither did Kennedy, as he says.

In the end plaintiff had advanced, in loans, interest and premiums, a sum in excess of $7160 on the new policy, when it matured. Its maturity value was $7160. But defendant claimed the right to deduct $3301.52, together with interest at six per cent per annum from August 9, 1905, amounting in all to $5480.51, leaving, as defendant claimed, $1200, which it was willing to pay to the legal holder of the policy. Plaintiff declined to accept this offer and brought this suit. This is a bird's-eye view of the case. Further facts follow.

The plaintiff, after the usual formal allegations, averred that the defendant on the 9th day of August, 1904, insured the life of Albert G. Kennedy in the sum of $8000, to be paid upon his death to his wife, Agnes

Kennedy; that it was provided in the policy that if the insured were living on the 9th day of August, 1915, the defendant would then pay to the legal holder or beneficiary of the policy, the sum of $5960, plus such profits as the defendant might have apportioned to this policy; that on the 14th day of September, 1905, said Kennedy and his wife, in consideration of an indebtedness in the sum of $1865.65 then due from said Kennedy to plaintiff, assigned the policy in writing to plaintiff, including in the assignment all rights which had accrued or which might accrue under the policy; that defendant was duly notified of the assignment and consented thereto, and on the 25th day of September, 1905, the defendant by a writing indorsed on the policy, substituted plaintiff as the beneficiary in lieu of Mrs. Kennedy, and that thereby plaintiff became and had ever since remained the owner thereof; that plaintiff had paid all premiums subsequently accruing upon this policy, and that the total amount of the premiums so paid was $4888.96; that on the 9th day of August, 1915, the insured was still living, and was then indebted to plaintiff in the sum of $5212.12, for money loaned and premiums paid as aforesaid; that on said date the profits which had been apportioned to this policy by defendant amounted to $1200, and that defendant thereupon became liable to plaintiff in the total sum of said profits plus the guaranteed value of the policy on said date, amounting to the total sum of $7160; that payment of said liability had been demanded, but that defendant had vexatiously refused to pay. Plaintiff prayed judgment in the sum of $7160, and for attorney's fees in the sum of $750, and costs.

The pertinent portions of defendant's answer are, in effect, as follows: Except for formal admissions as to the corporate existence of plaintiff and defendant, and an admission that defendant had issued the policy in question, the answer contained, first, a general denial. This was followed by averments to the effect that the promise to pay the holder or beneficiary of the policy the sum of $5960 and accrued profits, was conditional, in this, that out of said sums should first be deducted

all indebtedness of the insured to the defendant; that on August 9, 1904, the insured had executed and delivered to defendant a writing acknowledging the receipt of a loan from defendant in the sum of $3301.52, and agreeing that said sum, together with any additional loans upon the policy, with six per cent interest on such loan or loans, should become due at the end of the distribution period or prior thereto upon the death of the insured, or upon his failure to make any payment due to defendant, and the total should be paid out of the proceeds of the policy; that the policy was issued in consideration of the execution and delivery of said writing by said Kennedy; that the policy was dated back nine years, thus giving Kennedy the benefit of a lower premium rate; that the policy called for the payment of twenty annual premiums in order to entitle the holder to the benefits specified in the policy, but that the premiums for the preceding nine years above-mentioned were paid only by the loan agreement above-mentioned, and, in fact, only eleven premiums had been paid upon the policy; that the profits apportioned to the policy on August 9th, 1915, amounted only to $720.51, so that its value on that date was only $6680.51; that the loan above-mentioned then amounted to $5480.51, and that the cash surrender value of the policy, after deducting the amount of the loan, was therefore only $1200, which sum defendant had offered to pay upon the delivery of the policy.

For another defense, defendant stated that the policy was executed and delivered in Texas and was a Texas contract; the debt of the insured to plaintiff was an individual obligation; that Mrs. Kennedy joined in the assignment only to secure her husband's debt to plaintiff, and that after the payment of such indebtedness, the remainder should be paid to Mrs. Kennedy; that after the payment of three annual premiums, the insured was entitled to borrow on the policy, and that in lieu of said three payments, the insured executed the loan agreement above mentioned; that both when the policy and loan agreement were executed and now it

was provided by the laws of Texas (quoting the statute) that non-negotiable instruments were subject, when in the hands of an assignee, to every defense that might have been pleaded against the assignor, and that therefore defendant had a right to credit the indebtness claimed to be due it as aforesaid upon the amount due on the policy.

As another defense, the defendant affirmed that plaintiff, being a national bank, could not lawfully purchase the policy, but could only take it as security for a pre-existing debt; that at the date when the insured assigned the policy to plaintiff, plaintiff's debt against him was past due and "became and was barred" by the four-year Statute of Limitations of Texas (quoting it); that the plaintiff's debt against the insured was barred long before this suit was brought, and that thereby plaintiff became merely a bailee of the policy for Mrs. Kennedy, and had no right to maintain an action thereon against defendant; that after plaintiff's debt became barred as aforesaid, plaintiff and insured, by agreement between themselves but without Mrs. Kennedy's consent, extended the time for the payment of such indebtedness, and that thereby plaintiff's lien upon said policy lapsed.

For a further defense, defendant asserted that the policy was not pledged to secure the plaintiff in the payment of the annual premiums; that each premium paid by plaintiff became a debt due it from Kennedy as soon as plaintiff paid it, and that all of them except the last were barred by the two-year Statute of Limitations of Texas (quoting it), and that all except the last five premium payments were barred by the five-year Statute of Limitations of Missouri.

Defendant for a further defense sets up the fact, as claimed by it, that long before the maturity of the policy plaintiff was informed of defendant's debt and claim against said policy, and thereafter continued to pay premiums thereon, and is therefore now estopped to deny defendant's right to deduct its debt from the amount due on the policy.

Having thus set up some ten defenses, the insurance company asserted that it had fully answered, and prayed to be dismissed. The reply, after a general denial, in substance averred that Kennedy never executed the loan agreement; that if he did sign it his signature was procured by fraud; that said agreement was without consideration and void as against public policy; that at the time the policy above named was issued, Kennedy was the holder of another policy in defendant company, which was held by plaintiff as security for Kennedy's indebtedness to it, as defendant well knew; that defendant informed plaintiff that said original policy had lapsed for non-payment of a premium note given by the insured, but that if plaintiff would pay that note and an annual premium of $488, a total of $800, defendant would reinstate the policy; that defendant made no mention of the loan agreement above mentioned; that plaintiff was thereby induced to pay said $800 and took an assignment of the policy and paid defendant over $4000 in premiums before defendant informed plaintiff of defendant's alleged claim against said policy; that as soon as plaintiff learned of defendant's claim plaintiff denied its validity, but made the two remaining premium payments in order to protect itself for premiums and money already paid by it, by keeping said policy in force until maturity; and that by its silence defendant was estopped now to assert its pretended claim.

Plaintiff's evidence tended to support its pleadings, and defendant introduced or offered evidence tending to support its answer, except as otherwise hereinafter indicated. So far as necessary, the instructions will be mentioned in the opinion proper. The verdict and judgment were in plaintiff's favor.

Appellant has not favored us with an assignment of errors, but has set out under the heading of Points and Authorities thirteen paragraphs which we will treat as in lieu of assignments of error. [Mugan v. Wheeler, 241 Mo. 376.] We will dispose of these questions in the order in which they are argued.

I. Appellant first suggests that the petition fails to state a cause of action, in that it fails to allege a demand for payment by respondent prior to the filing of the suit. This contention is based upon the claim that by the terms of the policy, appellant agreed upon the maturity of the policy to do one of five things named in the policy "at the option or demand of the person entitled to exercise the option." We find no such provision in the policy. Furthermore, the petition contains an averment that "the plaintiff has kept and performed all of the terms and conditions of said policy of life insurance required to be kept and performed by the plaintiff, both before and after the maturity of the claim herein sued for." Appellant did not demur to the petition, but did object to the introduction of any evidence, upon the ground that the petition failed to state a cause of action. This practice is not to be commended. The allegations of the petition are sufficient as against such an objection.

*Cause of Action.*

II. Appellant next argues that Mrs. Kennedy was the beneficiary of the policy; that the only consent she ever gave to the assignment was to the effect that the policy might be pledged to secure her husband's indebtedness to respondent in the sum of $1034.65, and that all subsequent arrangements were between the respondent and the insured only, and without her knowledge or consent, and were void as to her; that when the insured assigned the policy outright to plaintiff, this arrangement was a cancellation of the debt for which Mrs. Kennedy pledged the policy, and the pledge was thereby released and respondent's lien upon the policy was thereby destroyed.

*Assignment.*

This argument fails to take into account several important matters. There is no privity between Mrs. Kennedy and appellant, and on what theory appellant undertakes in this action to assert her rights, is not apparent. Furthermore, the insured had the right under the terms of the policy to change the beneficiary, and exercised that

right in favor of the respondent. Appellant consented to this change. Again, Mrs. Kennedy's rights were conditioned upon her remaining the beneficiary in the policy and surviving her husband, and the evidence shows that she died about 1907 or 1909, during her husband's lifetime and several years before the maturity of the policy, and that prior to her death, respondent had been made the beneficiary in the policy. By an express provision of the policy, any payments becoming due under it were to be made to the estate of the insured, or to his assigns, in the event of the death of Mrs. Kennedy prior to the maturity of the policy. Where, as here, the right to change the beneficiary is reserved, the insured may assign the policy at will. [Fuos v. Dietrich, 101 S. W. (Tex. Civ. App.) 291; 6 Cooley's Briefs on Ins. p. 424; Splawn v. Chew, 60 Tex. 532, l. c. 534.] Under the option clause of the policy, the appellant agreed to pay upon August 9, 1915, upon the surrender of the policy by the insured or his assigns, the full sum of $5960, plus accured profits, subject to existing indebtedness, provided the insured was then living and all premiums had been paid. The insured was living upon that date, and all premiums had been paid. Mrs. Kennedy was then dead, and respondent was then the holder of this policy by assignment. We rule this point against the appellant.

III. Appellant's next contention is that the respondent's debt became barred by the four-year Statute of Limitations of Texas, and for that reason respondent

Limitations. cannot recover. This statute was offered in evidence, and excluded by the court. The debt to which appellant here refers is Kennedy's original indebtedness to respondent, to secure which the policy was pledged. As to this debt, appellant contends that Mrs. Kennedy held the relation of surety, and that the pledge of the policy was released by operation of law when the claim became barred by the Statute of Limitations. This record discloses numerous pertinent answers to this contention, but two will suffice. The right to plead the Stat-

ute of Limitations is a privilege personal to the debtor or to those standing in privity with him by inheritance or estate, such as personal representatives, heirs, grantees or mortgagees. [1 Wood on Limitations (4 Ed.), p. 142, and cases there cited.] Appellant occupies no such relation either to the insured or to Mrs. Kennedy, except, perhaps, as to the so-called loan agreement, to which further reference will be made. Furthermore, this is not an action on the debt, but on the policy. Limitation did not begin to run until the policy matured. [Harde v. Germania Life Ins. Co., 153 S. W. (Tex. Civ. App.) 666, l. c. 669; Bush v. Kansas City Life Ins. Co., 214 S. W. (Mo.) 175, l. c. 179.] We decide this contention against appellant.

IV. Appellant asserts that the contract for the purchase of this policy by respondent is void as against public policy. The reason is said to lie in the fact that in such case the purchaser has an interest in the death of the insured. Price v. Supreme Lodge, 68 Tex. 361, is cited in support of this contention. The plaintiff in that case had no insurable interest in the life of the insured, nor did the relation of debtor and creditor exist between them. The Price case expressly recognizes an exception to the rule therein announced when the relation of debtor and creditor does exist. In such cases, practically all of the authorities, including the Price case, hold that the assignment is not void, but is at least valid to the extent to which the policy becomes security for the existing debt and for all advances thereafter made by the assignee upon the policy. The balance, if any, upon the maturity of the policy becomes payable to beneficiaries originally designated. This is the rule in this State, as shown by the following cases which, with commendable frankness, appellant cites: Tripp v. Insurance Co., 177 Mo. App. 339, l. c. 343; Jenkins v. Morrow, 131 Mo. App. 288, l. c. 296; Bruer v. Kansas Mut. Life Ins. Co., 100 Mo. App. 540, l. c. 544. This is also the rule in the United States Supreme Court. [Cammack v. Lewis, 15

*Public Policy.*

Wall. 643, 1. c. 648; Warnock v. Davis, 104 U. S. 775, 1. c. 779.]   See, also, Peoria Life Ins. Co. v. Hines, 132 Ill. App. 642, 1. c. 647; Reed v. Provident Sav. Life Assurance Soc., 190 N. Y. 111, 1. c. 119. If, therefore, appellant feared that some one other than respondent might set up a claim to any balance due upon this policy in excess of the amount of respondent's claims, it was its duty to bring such parties into court and require them to interplead. It could easily have relieved itself of any burden in the matter by paying the fund into court. This course is pointed out as a proper one in Cheeves v. Anders, 87 Tex. 287, 1. c. 292, also cited by appellant, in the following language:

"When an insurance company has issued a policy upon the life of a person payable to one who has no insurable interest in the life insured, or when a policy has been assigned to one having no such interest, the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted, and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties. [Ins. Co. v. Williams, 79 Tex. 637, and authorities cited.]"

In the instant case, respondent's demand is made up of its original claim against the insured, amounting to $1865.65 on September 14, 1905, and premiums thereafter paid by it amounting to $4888.96, which sums, with interest at six per cent per annum from the maturity of the policy, amount to the sum for which the verdict was returned, exclusive of attorney's fees. The total consumed the entire amount of respondent's liability under the policy. It had contracted to pay this amount to the holder of the policy at maturity. Respondent held the policy at maturity. Hence, respondent was entitled to recover. There is no merit in appellant's contention on this point.

V. Appellant avers that instruction number one given for respondent is erroneous. This instruction told the jury to find for plaintiff if the jury believed that the insured on or about September 14, 1905, assigned the

**Legal Holder:**
**Assignment:**
**Demand.**

policy to the bank; that the bank was still the holder of the policy, and that the insured was living at the date of the trial. There was substantial evidence to support a verdict in respondent's favor upon all of those facts. The instruction did not purport to cover the whole case. The evidence also showed that appellant had admitted its liability to the legal holder of the policy in the sum of $1200, and indeed liability to the legal holder of the policy to that extent is admitted in the answer. The instruction required the jury to find that respondent was the assignee, and on that point was sufficient. Appellant claims that the instruction was erroneous in not requiring the jury to find that Mrs. Kennedy had executed an assignment of the policy, because the ownership was in her. Her only interest at any time was that of contingent beneficiary. The beneficiary had been changed, by consent of appellant. The insured had the absolute right under the policy to change the beneficiary. The wife's consent was unnecessary. Mrs. Kennedy was dead and thus the only contingencies upon which she might have had a beneficial interest had been extinguished, both by the substitution of a new beneficiary and by her death prior to the death of the insured. It is said that the instruction did not require the jury to find that a demand had been made. The evidence shows that under date of August 13, 1915, respondent, referring to its claims against this policy, wrote appellant, saying:

"We propose to have every dollar coming to us in this settlement, want nothing more and will accept nothing less. Advise us promptly your intentions, that we may know your attitude. We do not wish to resort to drastic action till you have had ample opportunity to settle this contract in accordance with the terms of your policy."

We think this was a demand. The evidence also shows a flat statement by one of respondent's witnesses, referring to payment, that "of course we demanded it." As we have shown, no demand was necessary, demand had been made, and the suit was a demand, in any event. Not only so, but during the trial respondent, upon a suggestion that no demand had been made, offered to dismiss its suit and pay the costs if appellant would pay the claim, and appellant refused to do so. There was no reversible error here.

But it is said that the instruction authorizes a verdict for respondent without regard to the validity or invalidity of the so-called loan agreement asserted by appellant. This is true, but appellant admitted liability to the legal holder of the policy to the extent of $1200, and the jury, by this instruction, was required to find respondent to be the legal holder of that document, before finding a verdict in respondent's favor. The instruction did not fix the amount for which the jury should find for plaintiff, but left that for another instruction. These criticisms are groundless.

VI. Instruction number two given in behalf of respondent, is assailed on the ground that it is inconsistent with instruction number four asked by appellant, and

Concealments.

modified and given by the court. This instruction, in effect, told the jury that if the insured did not sign the loan agreement, or if his signature thereto was secured by "fraudulent representations or concealments" on the part of respondent and that "he did not know or understand that it was an agreement to pay respondent $3301.52 and that he did not in fact make any such agreement," then appellant was not entitled to deduct that sum or any part thereof from the maturity value of the policy.

Instruction number four, above-mentioned, informed the jury that appellant was entitled to deduct the amount designated in the loan agreement, unless it was "obtained by false and fraudulent representations," thus making

no reference to fraudulent "concealments" mentioned in instruction number two. The reply denied that the insured ever executed the loan agreement, and then pleaded that his signature thereto was obtained, if at all, "by fraud and misrepresentation; that said Kennedy did not know or intend to sign any such paper and did not know that any charge, such as [is] set forth in said paper was made against him." These allegations were not assailed by motion to make more definite and certain, or otherwise, in the trial court, and are, we think, sufficient after verdict. [Rutledge v. Swinney, 261 Mo. 128, 1. c. 141.] We also think that under these circumstances, they are sufficiently definite to support an instruction on fraudulent concealment, such as is contained in instruction two. Such concealment is, by reasonable inference, within the scope of the allegations of the reply. Error, to justify reversal, must be material. [Shinn v. Railroad, 248 Mo. 173, 1. c. 180.] The fact that such fraudulent concealment is not mentioned in instruction number four, if error at all, is error in favor of appellant, and of this it cannot complain. Hence appellant's contention on this point is overruled.

VII. Appellant contends that there is no evidence to support the finding of the jury that the loan agreement was obtained by fraud. The evidence on this point is

Evidence of Fraud.

confined to the deposition of A. G. Kennedy, the insured. It covers several pages of the abstract, and for that reason we will state its substance rather than encumber this opinion by setting it out in full.

Kennedy had no pecuniary interest, other than the payment of his indebtedness to respondent, in denying the execution of the loan agreement, but he emphatically and repeatedly did deny having signed it. He admitted having signed other papers connected with the policy at the time the loan agreement was said to have been signed, but says that the loan agreement was not so much as mentioned to him. The agreement admitted an indebted

ness of $3301.52 on the part of the insured to appellant. It is called a "loan" in the agreement, but appellant claims it was to evidence the difference in the annual premiums for nine years, between a policy formerly held by Kennedy and the policy here in suit. The former policy was surrendered at the time the present policy was issued, and this loan agreement is claimed to have been executed at that time. The evidence shows that at that time Kennedy was hard pressed financially, in debt and seeking to borrow money. The cash surrender value of the old policy was apparently much less than $3300, and by entering into this loan agreement, Kennedy would have been increasing his indebtedness with no corresponding benefit. Furthermore, the agent representing the appellant, with whom Kennedy transacted this business, was not produced as a witness, nor was any reason given for a failure to produce him. It is worthy of remark, also, that when Kennedy's deposition was taken, this loan agreement was not presented for his inspection, although appellant then had possession of the document; appellant's whole claim is based upon this agreement, and the genuineness of Kennedy's signature was disputed. Appellant, by counsel, attended the taking of the deposition and cross-examined the witness. From these and various other circumstances appearing in evidence, the jury was, we think, warranted in finding that the loan agreement was never in fact signed by Kennedy, or, if signed by him, that his signature was fraudulently obtained. Appellant's evidence on this point consisted solely of the testimony of an expert on handwriting, who compared the signature on the loan agreement with various signatures admittedly made by Kennedy. The expert witness expressed the opinion that the signature to the loan agreement was in Kennedy's handwriting. The weight of this evidence was, of course, for the jury. We think there was sufficient evidence on this point to support the verdict.

VIII. The appellant claims that error was committed in allowing an attorney's fee in behalf of respondent, for the reason that this is a Texas contract and no statute of that state authorizing such an allowance was pleaded. In this contention appellant is clearly right. This contract was made in Texas. Respondent is a resident of Texas, paid the premiums there, and demanded performance of the contract in that state. The Texas statute, if any there is on this proposition, is not pleaded. We do not take judicial notice of the statutes of a sister state, and if such a statute as would authorize the allowance of an attorney's fee exists in that state, it should have been pleaded and proven in the same manner as any other fact. [Fidelity Loan Securities Co. v. Moore, 217 S. W. (Mo.) 286, 1. c. 289.] The allowance of an attorney's fee relates to the right and not to the remedy. No attorney's fee should have been allowed. [Thompson v. Traders' Ins. Co., 169 Mo. 12, 1. c. 29; Ayers v. Continental Ins. Co., 217 S. W. (Mo. App.) 550, 1. c. 551.]

*Attorney's Fee.*

Appellant's contention that the reply admits the execution of the loan agreement by the insured is not borne out by the record. The reply plainly denies it. Various other complaints of appellant are also without foundation, and for that reason will not be discussed, although we have considered all of them. We have passed upon all questions that appellant thought sufficiently important to dignify with an argument, and upon some that it did not argue. Except as to the allowance of the attorney's fee as above noted, the decision of the trial court was right. Its essential justice commends it to our consideration.

Appellant's conduct, as revealed by this record, is not such as to enlist our sympathies. At the time it took the old benefit certificate—for that, apparently, is what it was—and issued the policy here in suit to Kennedy, the respondent held the old policy in pledge to secure a debt of a little more than $1000. Appellant knew this fact. Without revealing the fact to respondent, it obtained

from Kennedy (by fraud, if Kennedy is to be believed), an agreement to pay appellant $3300. This sum was to be a lien upon the new policy, but no suggestion of that fact appeared upon the policy itself. For nine years thereafter, while respondent held the new policy in pledge for its debt and the premiums it was paying, appellant accepted the annual payments of $488 from respondent in silence, and thereby created the fund out of which it now seeks to pay its claim of $3300, and interest, leaving only $1200 to be paid to respondent as its return on an investment of approximately $6000, extending over a period of eleven years. It is too plain for argument that respondent never would have entered into such an arrangement with knowledge of appellant's claim. It is speaking mildly to say that appellant's conduct savors strongly of intentional over-reaching. Business acumen may become too acute to be consistent with fair dealing. Had appellant dealt openly and fairly with the insured and with respondent, there would have been no occasion for this litigation. We are not disposed, in view of these facts, to strain a point to aid appellant. So far as we are concerned, the tree may lie where it has fallen.

The error in allowing the attorney's fee can easily be cured. If the respondent will, within ten days, file a *remittitur* of the amount of the attorney's fee, $750, as of date of the date of the judgment, March 16, 1917, the judgment will be affirmed. Otherwise, it will be reversed and remanded for further proceedings consistent with this opinion. It is so ordered. All concur.