**In the Matter of Barbara S. FRANKLIN and Priscilla B. Ransohoff, Claimants to the Proceeds of the Insurance Policy of Horace A. Franklin.**

Civ. A. No. 88–1201–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 24, 1989.

Robert J. Zelnick, Szabo, McCarthy, Quinto, Webb & Zelnick, P.C., Woodbridge, Va., for Franklin.

David J. Gogal, Blankingship & Keith, Fairfax, Va., for Ransohoff.

## MEMORANDUM OPINION

ELLIS, District Judge.

This matter came before the Court for a bench trial on the merits. In addition to the testimony of both claimants, the Court received into evidence the parties' proffered exhibits and the testimony of a third witness by deposition. The Court here sets forth its findings of fact and conclusions of law, pursuant to Rule 52, Fed.R.Civ.P.

At issue in this interpleader action[1] is the right to receive the proceeds of a life insurance policy issued by the stakeholder, Northwestern National Life Insurance Company, to Horace A. Franklin, as the insured, in January, 1950. The insured died on November 20, 1987. His widow, Barbara S. Franklin, one of the claimants here, contends that she is entitled to the proceeds of the policy because she is the named beneficiary. The second claimant, Priscilla B. Ransohoff, contends that she is entitled to the lion's share of the proceeds by virtue of a $5,000, five percent loan she made to the insured in November 1957. At that time, the insured assigned the policy proceeds to claimant Ransohoff as security for payment of the loan "as her interest may appear." Assignment of Policy No. B 743 015 dated November 26, 1957.[2] Claimant Ransohoff contends that the insured never repaid the principal loan amount or

---

1. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1335 (1989). The action is filed by a corporation "having ... issued a ... policy of insurance ... of $500 or more" and there are "[t]wo or more adverse claimants, of diverse citizenship" who are claiming the benefits of the policy. 28 U.S.C. § 1335(a). Defendant Barbara S. Franklin is a Virginia citizen and defendant Priscilla B. Ransohoff is a New Jersey citizen. The policy benefits exceed $500 in value.

Venue is appropriate pursuant to 28 U.S.C. § 1397 as one of the claimants resides in this district.

2. This assignment was made subject to policy loans and indebtedness to the insurer.

any interest, which at the time of the insured's death totaled $12,812.50, $5,000.00 in principal and $7,812.50 in interest.

The policy's original face value was $30,000. By November, 1987, loans and assignments against the policy had reduced the amount payable under the policy to $13,283.19. By September 19, 1988, this sum had grown with interest to $14,330.83. This is the sum the stakeholder deposited with the Court when it filed its interpleader complaint on September 20, 1988.[3]

There is a threshold, potentially dispositive statute of limitations issue. The policy beneficiary, claimant Franklin, contends that Ransohoff's claim is time barred because the alleged loan was made more than thirty-eight years ago and no effort was ever made to collect until now. Franklin's statute of limitations argument misconceives the gravamen of Ransohoff's claim and hence focuses on the wrong target. It is the assignment of the insurance policy proceeds that is the basis of Ransohoff's claim, not the thirty-eight year old loan note. To be sure, a suit on the note would be barred by the applicable New Jersey statute of limitations.[4] This is not such a suit; rather, Ransohoff's claim is based on the assignment of the policy proceeds. In many jurisdictions, it has long been settled that the statute of limitations does not bar collection on an assignment of insurance proceeds given as collateral, even though a separate action on the underlying debt may be barred. An early case illustrating this principle is *Hill v. Bush*, 192 Ark. 181, 90 S.W.2d 490 (1936). There, as here, the insured assigned his insurance policy to secure a debt evidenced by a note. A suit on the note would have been barred by the statute of limitations. On these facts—facts strikingly similar to those at

bar—the Arkansas Supreme Court held that "[n]otwithstanding the debt is barred, [the beneficiary] cannot maintain an action for the proceeds of the policy without paying the debt." 90 S.W.2d at 493. In other words, the assignment of policy proceeds as collateral operated as a pledge and therefore remained effective even though the limitations period on the note had expired. The beneficiary could not collect the proceeds without first paying the debt. In the words of the *Hill* court,

> [w]here a debt is secured by a pledge, as in the present case, the running of the statute of limitations destroys, of course, the right of recovery on the debt, but has no effect on the right of the pledgee to retain the property until the debt is paid and to enforce his claim against the property.

90 S.W.2d at 493–94. An authoritative treatise cites *Hill* and states the operative principle in the following terms:

> [t]he fact that the statute of limitations bars the debt which is secured by the assignment does not discharge the assignment. The result is that the beneficiary is only entitled to the excess proceeds of the policy as though the period of the statute of limitations had not run.

*Couch on Insurance 2d* § 63A:250, at 138 (1983).

A more contemporary application of this principle may be found in *Jennings v. Prudential Ins. Co. of America*, 402 So.2d 1367 (Fla.App.1981). In that case, a policy beneficiary seeking the policy proceeds sued the insurer and the policy assignee. The assignee was a bank that had made loans to the insured and obtained an assignment of the policy as collateral. There, the loan in question had been discharged in bankruptcy. Notwithstanding this, the

---

3. By agreement, the stakeholder was dismissed from this action.

4. This Court in an interpleader action based on diverse citizenship must apply the choice of law rules of the forum state. See *Williams v. McFerrin*, 242 F.2d 53 (5th Cir.1957); *American Re–Insurance Co. v. Ins. Comm'n of State of California*, 527 F.Supp. 444 (C.D.Cal., 1981). In Virginia, the statute of limitations of the place of the making of the contract is applied to determine

whether an action on the contract is time barred. Va.Code § 8.01–247 (1984); *see also Norman v. Baldwin*, 152 Va. 800, 148 S.E. 831 (1929) (in considering whether a contract action is barred by the statute of limitations, Virginia applies the law of the place of making the contract). The parties agree this loan contract was made in New Jersey, which has a six-year statute of limitations for actions in contract. N.J.Rev.Stat. § 2A:14–1.

Florida court held the assignment valid and enforceable, barred by neither the statute of limitations nor the bankruptcy discharge. As that court put it,

> [t]he assignment from [the] husband to the Bank vested the legal title of the policy in the Bank, subject to the right of the insured to redeem the policy by the payment of the debt for which the policy was pledged as collateral. The discharge of the bankrupt insured discharged his personal liability. Although the bank can no longer collect from [the] husband, the discharge does not prevent the Bank from collecting its lien on the proceeds of the policy assigned to it as collateral for a debt, to the extent of the unpaid balance of the debt.

402 So.2d at 1369. Given this, the court concluded that "[n]either the estate nor the beneficiary has any right to or interest in the death benefits of the assigned policy except to the extent that these proceeds exceed the debt owed." *Id.* The same result obtains here. Although a suit on the note is barred, it does not follow that Ransohoff's rights in the assignment of the policy are barred. They are not. Those rights may be vindicated, as here, in a claim against the insurer based on the policy assignment. That claim is not barred if, as here, it is asserted in timely fashion after proof of death of the insured.[5]

New Jersey, whose law applies here, has apparently not decided this precise issue. But analogous decisions point persuasively to the conclusion that New Jersey would follow the *Hill v. Bush* line of authority. First, New Jersey recognizes that the statute of limitations barring of a remedy does not eliminate the underlying right. Thus, in *Duttkin v. Zalenski,* 140 N.J.Eq. 200, 54 A.2d 227 (N.J. Ch.1947), the court stated that:

> [t]he erroneous notion is sometimes entertained that the statute of limitations of actions, when applicable, absolutely extinguishes the debt. Not so. The function of the statute is merely to bar an action for the recovery of the debt ...

*Id.,* 54 A.2d at 230. In *Duttkin,* an estate's beneficiaries sued the executrix for paying one of the decedent's debts long after the statute of limitations had expired. The executrix prevailed. In that court's view, the statute of limitations extinguished the right of recovery, but not the underlying debt. Hence, the executrix was not obligated "to reject and exclude a just and honest debt." *Id.; see also Miller v. Bd. of Chosen Freeholders of County of Hudson,* 10 N.J. 398, 91 A.2d 729 (1952); *Zoffer v. Crane,* 120 N.J.Super. 538, 295 A.2d 367 (N.J.Super.Ct.App.Div.1972).

Further, New Jersey law recognizes that, in cases based on contracts, the statute of limitations begins to run only from the time the plaintiff develops an enforceable interest in the collateral. For example, in *Federal Deposit Ins. Corp. v. Valencia Pork Stores, Inc.,* 212 N.J.Super. 335, 514 A.2d 1365 (N.J.Super.Ct.Law.Div.1986), the Federal Deposit Insurance Corporation (FDIC) attempted to enforce its interests in lease agreements for heavy machinery assigned to it by a member bank. The lease agreements provided that the defendants would pay rents. When the leases expired, defendants would own the machinery. Before the lease expired, defendants defaulted on the rents. The leases expired within six years of the date suit was filed. Defendants

---

5. For other cases applying this general principle, see *Sansone v. Sansone,* 586 S.W.2d 87 (Mo.Ct.App.1979); *Gallaher v. American–Amicable Life Ins.,* 462 S.W.2d 626 (Tex.Civ.Ct.App. 1971); *Potter Title & Trust Co. v. Berkshire,* 156 Pa.Super. 1, 39 A.2d 268 (1944); *Lanier v. Shuman,* 195 Ga. 245, 24 S.E.2d 55 (1943); *Fidelity & Casualty Co. v. Lackland,* 175 Va. 178, 8 S.E.2d 306 (1940) (obligation of surety is not extinguished by running of statute in favor of principal); *Charlotte Nat. Bank v. Mutual Benefit Life Ins.,* 210 N.C. 140, 185 S.E. 648 (1936); *First Nat. Bank v. Security Mut. Life Ins. Co.,* 283 Mo. 336, 222 S.W. 832 (1920); *United Cigarette*

*Mach. Co., Limited v. Brown,* 119 Va. 813, 89 S.E. 850 (1916) (a pledge may be enforced even though the debt is barred by the statute of limitations); *Manson & Shell v. Rawlings' Ex'x,* 112 Va. 384, 71 S.E. 564 (1911) (a surety is not released because a joint judgment is barred as to the principal); *Conway v. Caswell,* 121 Ga. 254, 48 S.E. 956 (1904); *Pollock's Adm'r v. Smith,* 107 Ky. 509, 54 S.W. 740 (1900); *Bowie v. Poor School Society of Westmoreland County,* 75 Va. 300 (1881) (where a deed of trust is given to secure a debt, the land may be sold to pay the debt, even though an action at law on the debt is barred by the statute of limitations).

asserted that the six-year statute of limitations had run because more than eight years had elapsed since defendants' failure to pay rent on the equipment. The court, however, held that the statute of limitations began to run on the FDIC's claim only after the lease agreements expired; the FDIC did not have an "enforceable right" until it could enforce the machinery lease agreements. *See also Andreaggi v. Relis*, 171 N.J.Super. 203, 408 A.2d 455 (N.J.Super.Ct.Ch. Div.1979); *cf. Kolker Chemical Corp. v. Lumbermens Mutual Casualty Co.*, 81 N.J.Super. 556, 196 A.2d 266 (N.J.Super.Ct. Ch.Div.1963). Similarly, the statute of limitations on the assignment of Franklin's insurance policy began to run only after the policy became payable on the death of the insured in 1987.

*Hawkins v. Southern Pipe & Supply Co.*, 259 So.2d 696 (Miss.1972), relied on by Franklin, is the sole case cited to the Court holding that the statute of limitations bars an action on an assignment of an insurance policy. *Hawkins*, however, is inapposite; it is based on Mississippi's unique statute of limitations which explicitly extinguishes not only the legal remedy for pursuing repayment of a debt, but the underlying debt as well. *Id.* at 697. The *Hawkins* court noted that in this respect Mississippi's statute of limitations "is different [from] that of most other states," *Id.*, including New Jersey. *See Miller v. Board of Chosen Freeholders of County of Hudson*, 10 N.J. 398, 91 A.2d 729 (1952); *Zoffer v. Crane*, 120 N.J.Super. 538, 295 A.2d 367 (N.J.Super.Ct.App.Div.1972); *Duttkin v.*

*Zalenski*, 140 N.J.Eq. 200, 54 A.2d 227 (N.J. Ch.1947).

At first blush, this result seems at odds with the statute of limitation's goal of barring stale claims. But this is a skewed view; it results from too narrow a focus. It ignores that this loan had no term and that the collateral was a right to life insurance proceeds. From this, it is reasonable to assume that the parties anticipated, if not intended, that the loan might not be repaid until decedent's death. As decedent was then relatively young, it is fair to assume that the parties anticipated that repayment of the loan might not occur for some considerable period of time beyond the loan limitations period. During this time, memories might well fade and proof might well be lost. But it is the creditor who bears the burden of proving the loan and its terms and it is the creditor, appropriately, who therefore bears the risk that the claim on the collateral will become stale and unprovable.

Franklin's threshold limitations attack fails, but her factual attack on the merits fares somewhat better. As noted, the policy assignment made no mention of the underlying loan amount or any interest rate. Rather, it simply stated that Ransohoff was assigned the policy proceeds "as her interests may appear." [6] Franklin now contends that Ransohoff's claim must fail because Ransohoff cannot prove her "interest" with the requisite precision. Based on all the evidence adduced at trial, the Court agrees in part and disagrees in part. First, the Court is satisfied that there was a loan and that the amount of the loan was $5,000.[7] While many strong winds have

**6.** This formulation, used not infrequently in these circumstances, presumably reflects the parties' view at the time that the amount owed by decedent might vary over time in the event of partial payments of principal or interest.

**7.** It now appears that the loan agreement was oral, evidenced contemporaneously only by the policy assignment. Ransohoff, in her deposition, indicated that a note existed but that she had not been able to locate it. Franklin mistakenly argued on summary judgment that failure to produce the note was fatal to Ransohoff's claim. The Court rejected this argument because Rule 1004(1), Fed.R.Evid., allows the ad-

mission of other evidence of the contents of a writing where the original has been lost or destroyed. *See Cipriani v. Sun Life Ins. Co. of America*, 757 F.2d 78 (3d Cir.1985) (insurance company employees testimony as to terms of lost insurance policy admissible); *Neville Construction Co. v. Cook Paint & Varnish Co.*, 671 F.2d 1107 (8th Cir.1982) (oral testimony of sales brochure appropriate when brochure destroyed by fire); *Bendix Corp. v. United States*, 600 F.2d 1364 (Ct.Cl.1979) (secondary evidence as to contents of drawing admissible when original patent drawing unavailable); *Klein v. Frank*, 534 F.2d 1104 (5th Cir.1976) (when contract lost, testimony of purchaser as to contents of con-

doubtless blown over the sands of time, the Court finds unmistakable footprints evidencing the loan and its amount. By contrast, proof of Ransohoff's claimed five percent interest rate has been lost in the shifting sands; no persuasive evidence of it remains.

■ The evidence on the existence of the loan and its amount is easily summarized. First, there is Ransohoff's testimony. She testified that she loaned the decedent $5,000.00 in 1957, that there was no time limit for repayment and that decedent never repaid any portion of the loan. While her testimony varied on some other points, it was constant and firm in these respects. Nor does the Court rely solely on this testimony. There is other abundant and persuasive support for the existence and amount of the loan. First, it is uncontested that contemporaneously with the oral loan agreement in 1957, the decedent executed an assignment of the policy in favor of Ransohoff. This assignment is persuasive corroboration of the loan's existence, if not its terms. Thereafter, in 1961, a letter prepared by Ransohoff's attorney and addressed to decedent made reference to the "$5,000 loan" and called for payment. Then, in January, 1965, the decedent elected to convert the policy to a "special whole life policy." On this occasion, he affirmed in writing the assignment of the policy to Ransohoff "as her interests may appear." Next, in April, 1971, the decedent's insurance agent wrote Northwestern's home office to request that the policy be arranged so that loans could again be made against the policy. In this connection, the agent stated that "[the insured] wishes that the interest (sic) of Dr. Ransohoff and the Bank be preserved in the event the policy becomes a claim." At that time, Ransohoff authorized the insurer to omit her name from a loan proceeds check. In other words, as she explained, she agreed to permit the decedent to borrow money on the policy and to receive the check for the proceeds of the loan without including her name on the check. Without Ransohoff's agreement to this effect, the policy assignment would have required inclusion of her name on the loan proceeds check. Similarly, in September, 1974, Ransohoff advised the insurer that she had no objection to increasing the decedent's loan amount on the policy by $1,900 provided her "$5,000 equity interest" was adequately protected. Her right to object stemmed from the policy assignment. Then, on January 26, 1981, the decedent's insurance agent, in an "agency request for service" sent to Northwestern's home office, stated "[y]ou will note that the policy is encumbered as follows: (1) Dr. Priscilla B. Ransohoff, 13 River Road, Monmouth Beach, New Jersey 07550, as assignee...." Ransohoff Trial Exhibit 17.

In sum, uncontroverted, credible evidence demonstrates convincingly that Ransohoff loaned the decedent $5,000 in November, 1957 and decedent, in turn, assigned the insurance policy proceeds to Ransohoff as security for this loan. The Court also accepts Ransohoff's testimony that decedent never made any payments on the loan. Franklin's testimony that the decedent never told her of the loan and that there was no mention of it in his papers is doubtless true, but not necessarily inconsistent with the Court's conclusion that Ransohoff loaned decedent $5,000 in 1957 and took an assignment of his life insurance proceeds as collateral.

■ As convinced as the Court is of the existence of the $5,000 loan, it is not at all persuaded that there was an agreed interest rate of 5%. Significantly, none of the documents, but one, mentions any interest

---

tract admissible); *White Ind. v. Cessna Aircraft Co.,* 611 F.Supp. 1049 (W.D.Mo.1985) (when original sales records destroyed, secondary evidence admissible to prove discarded original sales records); *Diplomat Homes, Inc. v. Commercial Standard Ins. Co.,* 394 F.Supp. 558 (W.D.Mo.1975) (secondary evidence admissible to demonstrate existence of lost insurance contract). *See generally,* Annot., *Federal Rules of Evidence: Admissibility Pursuant to Rule 1004(1) of Other Evidence of Contents of Writing, Recordings, or Photographs, Where Originals Were Lost or Destroyed,* 83 A.L.R.Fed. 554 (1987). At trial, it became clear that Franklin and Ransohoff never executed a promissory note in 1957. Ransohoff, in her deposition, simply confused a note with a policy assignment.

rate. Only a Ransohoff letter written after decedent's death mentions a 5% interest rate. This letter is too little, too late. Also unconvincing is Ransohoff's claim that her reference in the 1974 letter to a "$5,000 equity interest" was a reference to the 5% interest rate. Of course, it is not unlikely that there was an interest rate, but Ransohoff has simply not met her burden of proving it.

An appropriate Order has been issued. The clerk is directed to send copies of this Memorandum Opinion to all counsel of record.