## A. H. SPLAWN ET AL. v. W. R. CHEW ET AL.

(Case No. 1539.)

1. INSURANCE.— In ordinary life insurance policies, the beneficiaries named have vested in them irrevocably all interest in the policy. Following Ricker *v.* Charter Oak Ins. Co., 27 Minn., 193, and other authorities. When, however, the person procuring the policy enters into some agreement as to what control the insured is to exercise over the policy (a matter permissible in all contracts), no indefeasible interest in such case would be vested in the beneficiaries.

2. SAME — BENEFIT FUND.— An association which, by reason of payments made by parties in the order before being received into membership, provides a fund from which a certain sum of money is to be paid to a deceased member who has complied with all its legal requirements, is, so far as such provisions are concerned, a mutual life insurance company. Every member is charged with a knowledge of the rules and by-laws of such association, bound by them, and entitled to the rights and privileges conferred by them.

3. SAME — DISPOSITION OF INSURANCE MONEY.— Where a section in the by-laws of such association reads: "Applicants shall enter upon their application the name or names of the members of their family dependent upon them, to whom they desire their benefit paid, and the same shall be entered in the benefit certificate (issued instead of a policy) by the supreme secretary, subject to such future disposal among their dependents as they themselves direct," such section vests the control of the certificate, so far as the selection of its beneficiaries is concerned, in the member insured. A clause or by-law of an insurance or other corporation, pointing out a way in which the right to dispose of the insurance money may be exercised, or relating to some other rights, merely directory in its character, and whose object is to protect the corporation, cannot be taken advantage of by outside parties claiming the insurance or other right under the charter of such corporation. Such provisions are for the protection of the company alone and can only be used by it. Ins. Co. *v.* Robinson, and other cases, followed and cited.

APPEAL from Red River. Tried below before the Hon. R. R. Gaines.

On the 20th day of December, 1880, E. J. Chew took out a benefit certificate in the order known as the American Legion of Honor, for $5,000, payable to "W. R. and Helen M. Chew, father and mother." He was a member of the local lodge of that order at Clarksville, Texas, by reason of which membership he obtained the certificate, and he continued as a member and retained possession of the benefit certificate and paid the assessments and premiums upon it until his death, which occurred on the 19th of December, 1882, in Red River county, Texas. On the 15th of February, 1882, he made his will, bequeathing this benefit certificate and the proceeds of it to his two minor children, Joseph F. and Helen R. Chew, and the interest on it to the support of his wife, Hattie M. Chew, during her

widowhood, and appointing appellants A. H. Splawn and T. A. Fuller executors of the will and guardians of his said minor children. The will was duly probated and the said Splawn and Fuller qualified as executors of the will and guardians of the children. The appellees, the beneficiaries named in the certificate, and the appellants, executors and guardians, both claimed the money secured by said certificate, and it was mutually agreed that the money should be collected by the Red River County Bank and held subject to the judgment of the court in the premises. The money ($5,000) was collected by the bank, and on the 15th of May, 1883, appellees filed their petition alleging that appellants had collected the money and asking judgment for it. On the 15th day of May, appellants filed their answer, setting up the facts as herein stated, and that there was no consideration from plaintiffs to deceased Chew for said policy, and asked judgment for the proceeds of the certificate. On the 21st of June, 1883, the case was tried, and the court rendered judgment for plaintiffs for the $5,000, adjudging that they were entitled to the same, and that a receipt to the bank by plaintiffs should be an acquittance of the bank, and that plaintiffs should pay the costs, to which judgment defendants excepted and gave notice of appeal.

*Taylor & Chambers*, for appellants, as to the disposition of the benefit certificate money, cited: Kerman v. Howard, Adm'r, 23 Wis., 108; Charter Oak Ins. Co. v. Brant, 47 Mo., 419; Ballou v. Gile, 50 Wis., 614; Clark v. Durand, 12 Wis.. 248; Lemon v. Phoenix Ins. Co., 38 Conn., 300.

*Sims & McDonald*, for appellees, as to the disposition of the proceeds of the benefit certificate, cited: Ricker v. Charter Oak Ins. Co., 27 Minn., 193 (38 Am. Rep., 289); Bliss on Life Insurance (2d ed.), secs. 307, 337; May on Insurance (2d ed.), sec. 392.

On benevolent associations being governed by the rules as to insurance companies in this character of contract, they cited: May on Ins. (2d ed.), 550; Comm. v. Witherbee, 105 Mass., 149; Kent Masonic Ins. Co. v. Miller, 13 Bush (Ky.), 489; Shunk v. Ford, 44 Wis., 370; Dietrich v. Mad. Rel. Ass., 45 Wis., 79; Mason's Ben. Soc. v. Winthrop, 85 Ill., 537.

On the binding character of the laws of chartered associations, they cited: 2 Wait's Act. & Def., 326; Anacosta Tribe v. Murback, 13 Md., 91; Cummings v. Webster, 43 Me., 192; Flint v. Pierce, 99 Mass., 68.

On the binding character of insurance contracts, they cited: 4

Wait's Act. & Def., 112; Mitchell *v.* Lycoming Ins. Co., 51 Penn. St., 402; Cole *v.* Iowa St. Ins. Co., 18 Iowa, 426; May on Ins. (2d. ed.), sec. 67; Frazer *v.* La. Eq. Life Ins. Co., 9 Ins. L. J., 817; Chase *v.* Ins. Co., 67 Me., 85.

WILLIE, CHIEF JUSTICE.— It seems pretty well settled by authority that in cases of an ordinary life insurance policy the beneficiaries named in such policy become the owners of it the moment it is issued, and the person procuring the insurance cannot by any subsequent act of his transfer to others the interest of those beneficiaries. Bliss on Life Ins., §§ 317, 337; Ricker *v.* Charter Oak Life Ins. Co., 27 Minn., 193.

The principle upon which this doctrine rests is that "the rights under the policy become vested immediately upon its being issued, so that no person other than those designated in it can assign or surrender it." See above authorities; also May on Ins., § 392.

The person procuring the insurance is held to divest himself of all interest in the policy, and to vest it exclusively in the beneficiaries, and to make an irrevocable settlement upon them of the amount for which the policy is issued. Ricker *v.* Charter Oak Life Ins. Co., *supra.*

But this is merely a matter of legal construction obtaining where a different understanding is not had between the original parties to the contract. The law does not prohibit the person procuring the policy from entering into such arrangements with the insurer as may be agreed on, either as to the persons who are to receive the benefit of the policy, or as to what control over it the "insured" is to exercise. In these respects an insurance policy does not differ from any other contract authorized by law, and should be subject to the same interpretation. The person procuring the policy for the benefit of another may reserve the right to change this designation in whole or in part, and the law will respect any change he may make in the beneficiaries of the policy in pursuance of such right. Bliss on Life Insurance, § 318; Hutchings *v.* Miner, 46 N. Y., 456. In such case there is no indefeasible interest in the insurance money vested in the beneficiaries named in the policy, nor settlement made upon them, which cannot be revoked. Such reservation being allowable, may be made expressly in the policy, or may become part of it by being included in any instrument or paper which enters into the insurance contract.

The institution in which the insurance in the present case was effected is known as the "American Legion of Honor of Texas."

Among other beneficent objects of the order is the following, contained in art. II, sec. 5, of its constitution, viz.: "To establish a benefit fund, from which on the satisfactory evidence of the death of a beneficial member of the order, who has complied with all its lawful requirements, a sum not exceeding $5,000 shall be paid to the family, orphans or dependents, as the member may direct."

This "benefit fund," according to the by-laws, is raised by means of payments made by parties joining the order before being received into membership, and assessments levied upon them upon death of a member, should this fund at the time be insufficient to pay the death benefit. Art. I, secs. 1–6.

Thus, the life of each member becomes insured immediately upon his entering the order, and he also becomes one of the insurers of the lives of his fellow members, i. e., to the amount required to be paid by him under the above provisions of the by-laws. The order is in effect, and so far as those provisions are concerned, a mutual life insurance company, in which the life of every member is insured by reason of his membership and compliance with the requirements of its constitution and by-laws.

Every one insured by reason of membership in such a company is charged with a knowledge of its constitution and by-laws, bound by their requirements and entitled to the rights and privileges conferred by them. May on Ins., § 552; Cales v. Ins. Co., 18 Iowa, 425. The present order did not issue policies as do ordinary insurance companies, but delivered to the insured a benefit certificate, which, together with the positive regulations of the order, evidenced the contract between the member and the company so far as the insurance was concerned. The question, then, as to whether the contract between E. J. Chew and the Legion of Honor vested an irrevocable right in the appellees, who were the beneficiaries named in the certificate, or left him the power to name by will or otherwise other and different persons to whom its benefits should accrue, must depend upon the terms of the certificate, as read in the light of the laws of the order and interpreted by them. The provision of article III, section 2, of its by-laws is as follows: "Applicants shall enter upon their application the name or names of the members of their family or those dependent upon them, to whom they desire their benefit paid, and the same shall be entered in the benefit certificate by the supreme secretary, subject to such future disposal of the benefit among their dependents as they thereafter direct."

The clear import of this section is to place the certificate entirely

under control of the member, so far as the selection of its bene-
ficiaries is concerned. He may direct at any time that the money
shall be paid to persons different from those named or contemplated
in the certificate, provided they are persons dependent upon him.
So far from vesting an irrevocable right in the original beneficiaries,
it vests no right whatever which the insured cannot by the very
terms of the contract revoke and annul. They have no perfect,
or vested right in the certificate, until the insured dies without di-
verting its benefits in favor of other dependents; and he alone is
the one who is to determine which of these dependents are to be
entitled to the insurance money. Hence all the rules of law for the
construction of ordinary policies, so far as they refer to the indefea-
sible rights of beneficiaries, accruing previous to the death of the
insured, have no application to this case, being contrary to the ex-
press provisions of the contract.

The right to change the disposition of money being established in
the member, the next question is, How is it to be exercised? It is
contended by appellees that it can be exercised only in the manner
pointed out in the third section of the third by-law, which reads as
follows: "Members may at any time, when in good standing, sur-
render their certificate, and have a new one issued, payable to such
beneficiary or beneficiaries dependent upon them as they may direct,
upon payment of a certificate fee of fifty cents."

This section is in further recognition of the right to make the
alteration, and it seems to be admitted that a surrender of the old
certificate and the issuance of a new one under this section would
effect a change in the beneficiaries of the policy. But is this the
only way in which such change can be effected? The right to make
the change is given by a different section of the by-laws, and exists
in the insured as long as he remains a member of the order. A
method by which he may accomplish it to the satisfaction of the
order is pointed out in the section last recited, but we do not con-
sider this as exclusive of all other ways of effecting the same object.
The design of this section is to protect the interests of the corpora-
tion. The company are entitled to know who are the parties
entitled to the benefit money, and this is an effectual and certain
means of giving that information. But, like all such provisions in
the by-laws of private corporations, it may be waived at the option
of the corporation, being for its benefit alone. This has been held
in reference to such provisions when prescribed in mandatory terms.
If they can be waived in such cases, much stronger would seem
to be the reason why this can be done when the course to be

pursued is directed, as in this instance, in permissive language alone.

A provision in the charter or by-laws of a corporation requiring that its stock shall be transferred on the books of the company will not vitiate an assignment as between the parties made in any other way known to the law for the transfer of like personal property. Such an assignment may even be made binding upon the company, if not objected to in the proper manner and at the proper time, though the provision as to the transfer may be peremptory. Angell & Ames on Cor., § 354; Black *v.* Zacharie, 3 How., 483; Bank *v.* Iglehart, 6 Gill, 50; Duke *v.* Cahawba Nav. Co., 10 Ala., 90.

The rules of law in reference to them rest upon the same grounds as those we have stated above, viz., that the provision is for the benefit of the company, and they alone may enforce or waive it when the rights of third parties, under the special protection of the law, have not intervened.

Other instances might be cited where contracts contrary to the express provisions of corporation charters and by-laws are enforced, such as insurance policies made and issued in a form different from what is prescribed, or lacking the signatures of some of the officers whose duty it is to sign them; or even contracts of that character resting in parol, when the requirement is that they should be in writing. Bliss on Life Ins., §§ 137, 141; Sanborn *v.* Ins. Co., 16 Gray, 448; Ins. Co. *v.* Robinson, 25 Ind., 536; 19 How., 318.

As a by-law of the order this provision entered into the understanding between the company and the member effecting the insurance, and the rights of interested parties are not strengthened by the fact that the same provision is found in the certificate. It is still a condition for the benefit of the company, to be insisted upon or waived according to their election.

The provision in the by-laws of the Legion of Honor as to changing the beneficiaries of a benefit certificate is not peremptory, but merely points out a method which shall satisfy the company as to the parties entitled to receive the benefit money. The suit is not between the claimant of this money and the corporation by whom it is to be paid, and the latter does not object to the manner in which the change of beneficiaries was made. The exact case before us seems to be one of the first impression; we have been furnished with no authorities precisely in point by the able and distinguished counsel who have represented the respective parties to the cause, although their briefs show great research for that purpose, nor have we been able to find any bearing upon the question. Upon prin-

ciple, however, and the rules which govern in the analogous cases to which we have alluded, we think that as between the parties to this suit the change of beneficiaries was fully effected by the will of E. J. Chew, and the right to the insurance money was vested in the parties named therein, the children of the deceased, and the judgment of the court below should have been in favor of the appellants. The judgment is, therefore, reversed and here rendered to the effect that the said appellants A. H. Splawn and T. A. Fuller, as executors of E. J. Chew and guardians of the minors Joseph F. and Helen R. Chew, are entitled to the $5,000, the proceeds of the policy of insurance in controversy, and that a receipt from them, as such executors and guardians, to the Red River County Bank, in which said sum is deposited, for the same, shall be in full satisfaction of this judgment; and further, that the appellees pay all costs of this court and of the court below.

REVERSED AND RENDERED.

[Opinion delivered December 14, 1883.]