Opinion delivered May 27, 1887.

| 68 | 361 |
|----|-----|
| 75 | 329 |
| 75 | 350 |
| 76 | 385 |
| 68 | 361 |
| 79 | 641 |
| 68 | 361 |
| 87 | 172 |
| 87 | 291 |

## No. 5303.

### H. R. PRICE *v.* SUPREME LODGE KNIGHTS OF HONOR.

1. POLICY OF INSURANCE.—A party having no insurable interest in the life of another can not receive an assignment of a policy of insurance issued upon the life of the latter by the Supreme Lodge of the Knights of Honor upon an agreement merely to pay the premiums or assessments

necessary to keep th e policy in force.  Such an assignment is in contra-
vention of public policy, and the fact that the rules of the Supreme
Lodge of the Knights of Honor may permit the transfer, can not vali-
date it.

2. SAME.—Such an assignment will not vitiate the policy, but will, on the
death of the insured, leave the insurance money payable to the parties
originally designated in the certificate.

3. PUBLIC POLICY.—Public policy will not recognize the transfer of a life
policy of insurance to another whose interest is involved in the early
death of the insured, thus creating a temptation to destroy human life.

4. SAME—CASES CITED AND APPROVED.—On this point the cases of Swick
v. Insurance Company, 2 Dill C. C., 160; Sternes v. Warner, 101 Massa-
chusetts, 364; ——— v. Insurance Company, 9 Rhode Island, 34, cited
and approved.

APPEAL from Limestone.  Tried below before the Hon. L. D
Bradley.

The opinion states the facts.  The conclusions of law filed by
the district judge are apparent from the opinion.

*Burrow & Kincaid,* for appellant:  On their proposition that
a consideration to support a contract need not be adequate—it is
sufficient if it be valuable.  It need not be a pecuniary benefit
to the opposite party—it is sufficient if it be a valuable consider-
ation, or disadvantage, or inconvenience to the party promising,
cited 1 Parsons on Contracts, 431; 2 Kent's Commentaries, 465,
twelfth edition.

On their proposition that the law does not prohibit the person
procuring a policy from entering into such arrangements with
the insuree as may be agreed on, either as to the person who is
to receive the benefit of the policy, or as to what control over it
the insuree is to exercise.  The person procuring the policy for
the benefit of another may reserve the right to change this
designation in whole or in part, and the law will respect such
change he may make in the beneficiaries of the policy in pursu-
ance of such right, they cited A. H. Splawn et als. v. R. Chew.
et al., 3 Texas Law Review, 23, January 15, 1884; Bliss on Life
Insurance, section 318; Hutchings v. Miner, 46 New York, 456.

On their proposition that every man has the legal right to
insure his own life to any amount, payable to his personal repre-
sentative (in the absence of direction to pay it to some one
else), even though the beneficiary has no insurable interest in
his life, they cited White, Executor, v. Smith et al., Tyler term,

1884, Willson, Judge; American Life and Health Insurance Company v. Robertshaw, 26 Pennsylvania State, 189; Langdon v. Union Mutual Life Insurance Company, 12 Insurance Law Journal, 548; Campbell v. New England Mutual Life Insurance Company, 98 Massachusetts, 381; Provident Life Insurance Company v. Baum, 29 Indiana, 236; Lemon v. Phœnix Mutual Life Insurance Company, 38 Connecticut, 294, 302; Fairchild v. Northeastern Mutual Life Association, 51 Vermont, 624; Olmstead v. Keys, 11 Insurance Law Journal, 55; same case, 85 New York, 593; Guardian Mutual Life Insurance Company v. Hogan, 80 Illinois, 35; St. John v. American Mutual Life Insurance Company, 31 New York, 31; Valton v. National Fund Life Association, 20 New York, 32; Ruse v. Mutual Benefit Life Insurance Company, 23 New York, 516; Ashley v. Ashley, 3 Simmons, 149; Clark v. Allen, 11 R. J., 439, reported in 23 American Reports, 496; Trenton Mutual Life Insurance Company v. Johnson, 24 New Jersey Law, 576; 3 Kent's Commentaries, twelfth edition, section 369, page 482, note 1; May on Insurance, section 535.

On their proposition that a bona fide assignee of a policy, valid in its inception, need not have any interest in the life insured, they cited 3 Kent's Commentaries, twelfth edition, 482, section 369, note 1; Campbell v. New England Mutual Life Insurance Company, 98 Massachusetts, 381; Provident Life Insurance Company v. Baum, 29 Indiana, 236; American Life and Health Insurance Company v. Robertshaw, 26 Pennsylvania State, 189. They also cited Clark v. Allen, 26 American Reports, 496–498; same case, 11 Rhode Island, 439, and cases there cited; 94 United States Reports, 457, 561, two cases.

On their proposition that all that is necessary to show, in order to take the case out of the objection of being a wager policy, is that the insured has some interest in the life of the *cestui que vie.* That there is a reasonable probability that he will gain by the latter's remaining alive, or lose by his death, or that his temporal affairs, his hopes of patronage and advantage in life, will be impaired by the death of the insured, they cited Bliss on Life Insurance, section 21; May on Insurance, 100; 3 Kent's Commentaries, twelfth edition, 482, section 369, note 1; Miller v. Eagle Life and Health Insurance Company, 2 E. D. Smith, New York, 268–294; Hoyt v. New York Life Insurance Company, 3 Brown, 440.

*L. B. Cobb* and *L. J. Farrar* and *Harrington & Kelley*, for appellee: On their proposition that one can not purchase or acquire an insurance policy on the life of another, having no insurable interest therein, if he pay or promise to pay, as the consideration therefor, merely the premium or assessments upon such policy. Such a contract would be a mere wager upon the life of the assured, cited Monroe v. Smelley, 25 Texas, 586; Warnock v. Davis, 104 United States, 775; Cammack v. Lewis, 15 Wallace (U. S.), 643; Reynolds on Life Insurance, 46; Bliss on Life Insurance, sections 17, 26; Morrill v. Trenton Insurance Company, 57 American Decisions, 102, 103; Brockway v. Mutual Benefit Life Insurance Company, 9 Federal Reporter, 249; Basque v. Adams, American Law Review, August, 1883, page 821 (Kentucky Ct. App.); Ohio v. Standard Life Association, American Law Register, September, 1882, page 620 (Ohio in point); Pennsylvania case cited in 18 Central Law Journal, 197; Missouri Valley Life Insurance Company v. Sturges, 4 Central Law Journal, 530; 12 Sloan's Legal and Financial Register, No. 2, page 22; 22 American Reports, 180 (from Illinois—son held to have no insurable interest in life of father); Insurance Company v. Hazzard, 13 American Reports, 313 (Indiana case of policy assigned, with consent of company, to one without interest—*held* he could not recover); Stephens v. Warren, 101 Massachusetts, 564; 17 Central Law Journal, 477; 13 Central Law Journal, 112, 114; 18 Law Journal, 279; 17 Law Journal, 499 (last case from Pennsylvania—a beneficiary without interest assigned to one without interest, and the representatives of insured recovered of such assignee, less the expenses and premiums paid by him); also 18 Central Law Journal, 18; Connecticut Life Insurance Company v. Tullidge, American Law Review, October, 1883, page 1020.

On their proposition that A may insure his life for the benefit of B, but B can not take out in his name a policy on the life of A (not having insurable interest therein), nor take by assignment a policy issued to A or another on his life, they cited White v. Smith, 2 Court of Appeals, Civil Cases, 399; 7 Northwestern Reporter, 273; Ferm v. Lewis, 10 Missouri Court of Appeals, 478; Worley v. Northwestern Masonic Aid Association, Federal Reporter, 227; same case, 3 McCreary, 53.

WILLIE, CHIEF JUSTICE. This suit was brought by H. K. Price to recover the amount alleged to be due him on a benefit certificate issued by the Supreme Lodge of the Knights of Honor

to Thomas C. Harper, who had died a member of the order.  The other defendants were sued with the lodge because they were the beneficiaries named in the certificate, and set up a claim to the amount due on it in opposition to the plaintiff.  The lodge made no defense to the action other than to ask the court to determine to whom the benefit money should be paid, and offering to pay it to the parties found by the court to be entitled to receive the money.

The original petition alleges that the lodge was engaged in a mutual aid and life insurance business, and that Harper, by becoming a member, had his life insured to the amount of two thousand dollars, payable to the beneficiaries named by him. The beneficiaries named in the certificate were the defendants, who were the wife and children of Harper.  The petition further alleged that it was necessary for Harper to pay certain dues to the lodge from time to time to entitle him to a good standing in the order and his beneficiaries to the insurance money in case of his death.  That Harper paid these charges for a while, but afterwards became so far in arrears that his membership was subject to suspension, and was about to be suspended, and his benefit certificate forfeited.  That Harper applied to plaintiff and offered that if plaintiff would pay his arrearages, and continue to pay his lodge dues and assessments, he, Harper, would transfer to him his benefit certificate.  To this the plaintiff assented, and with the consent of the lodge, paid up all Harper's arrearages, and kept the certificate alive up to the date of Harper's death by the payment of all dues and assessments for which he was liable as a member of the order.  The appellant complied with his contract by making the payments as agreed, and kept the certificate alive down to the death of Harper.  The latter was ready to make the transfer, and the lodge was ready to change the certificate so as to make it enure to the benefit of the plaintiff; but the certificate could not be found and was not found until after Harper's death.  The dues were received by the lodge from Price, and he was recognized by it as the owner of the certificate.

It was further alleged that the constitution and laws of the order allowed a member to make any person he might choose the beneficiary of his certificate, whether he held an insurable interest in the life of the member or not; and that it was so contracted in the present instance.

The plaintiff alleged that he held an insurable interest in the

life of Harper, as they were cousins, and plaintiff was a member of Harper's family, and in his employment, and dependent on him for employment and support.

General and special demurrers were filed to the plaintiff's pleadings by the defendants other than the lodge, and these were sustained by the court below, and the plaintiff refused to amend. The cause was not dismissed; but it having been agreed that the plaintiff had paid to the lodge seventeen dollars and seventy-five cents in dues, arrearages and mortuary assessments in behalf of Harper, judgment was rendered for the plaintiff for that amount, and for the defendants for the balance of the two thousand dollars less the costs, etc.

From that judgment this appeal is taken. The judge below placed in writing his conclusions of law upon the demurrer, and these show that he held, among other things, that the agreement between Price and Harper was a wagering contract, and that it could not be enforced either as against the lodge or the other defendants. In our view of this case this ruling is all that need be considered in determining the appeal.

It is too clear for argument that Price had no such interest in the life of Harper as entitled him to insure it for his own benefit. Indeed, it is not claimed here that the fact that they were cousins, and Price an adult male member of Harper's family, and dependent on him for employment and support, gave him such interest as would support a life policy for his own benefit. But the appellant did not procure a policy upon the life of Harper, but was the assignee of one which had been previously issued to Harper himself by the Knights of Honor. The consideration which he gave for the assignment was the payment of the money which was owing or might become due from Harper to the lodge in order to keep alive the certificate it had issued to him. The question, then, is: Can a party, having no insurable interest in the life of another, receive an assignment of a policy of insurance paid upon the life of the latter, upon an agreement merely to pay the premiums or assessments necessary to keep the policy in force? This question has met with different answers from different courts of the United States. In our own State no occasion for its determination has heretofore arisen.

It is almost universally conceded that policies procured by persons having no interest in the life of the insured are void at common law as against public policy. The policy holder has

nothing to lose for which he can claim indemnity; on the contrary, his interest is in the early death of the insured; when that occurs, he ceases to pay premiums, and receives the amount of the policy. This creates a temptation to destroy human life, and the common law forbids the contract. These are the grounds upon which such policies are held to be void. Are they applicable to a case where the policy is first taken out by the person whose life is insured, and then transferred by him to one who has no interest in his life?

It is pretty generally held that if a person effects insurance upon his own life, and, in pursuance of a previous agreement, immediately and without consideration, transfers the policy to one who has no interest in his life, but who agrees to pay the premiums upon the policy, it will be void. (Snick v. Ins. Co., 2 Dill. C. C., 160; Stevens v. Warren, 101 Mass., 564; Mowry v. Ins. Co., 9 R. I., 346.) And it has been held by the Supreme Court of the United States, that a transfer would not be enforced under such circumstances though the insured were indebted to the assignee in a small sum disproportionate to the amount of insurance on his life; but the policy would be deemed a security for the debt, and such advances as might afterwards be made on account of it. (Cammack v. Lewis, 15 Wall., 643.) Is there such difference between the principle upon which these decisions rest, and those applicable to the sale of a policy already procured, to an assignee having no interest in the assured, as to make the latter lawful, whilst a policy procured without interest, and an assignment in pursuance of a previous assignment are held invalid?

The Supreme Court, United States, in the case of Wornock v. Davis, 104 United States, 775, says that it can not see any such difference; and, proceeding upon this view, many of the State courts have held such assignments void, or treated the assigned policies as mere securities for the moneys actually advanced by the assignee. (Ins. Co. v. Hazzard, 41 Ind., 116; Ins. Co. v. Sefton, Id., 380; Ins. Co. v. Sturges, 18 Kans., 93; Gilbert v. Moose, 104 Pa. State, 74; Basye v. Adams, 81 Ky., 368.) This too, is the conclusion to which many eminent text writers have arrived. (May on Insurance, sec. 398; Greenhood on Pub. Pol., 288.) On the contrary, the courts of some States have held such assignments valid though the assignee could not have taken out in his own benefit an original policy upon the life of the assignee. (Clark v. Allen, 11 R. I., 439; Marcus v. Ins. Co., 68

N. Y., 625; Clarck v. Durand, 12 Wis., 223; Ins. Co. v. Allen, 138 Mass., 24.)

We think those decisions which hold these assignments invalid are based upon the more satisfactory reasoning. When the policy is transferred it becomes the property of the assignee. He is subject to all the obligations imposed by it, and entitled to all its benefits. He becomes the holder of a policy upon the life of a person whose early death will bring him pecuniary advantage. The temptation to bring about this death presents itself as strongly to him as to a party who originally effects insurance for his own benefit upon the life of another. Public policy removes the temptation to take human life, and it can not matter how that temptation is brought about. If by reason of a contract between two persons, the one is tempted by pecuniary interest to destroy the other, the form of the contract is of no importance in testing its validity. The law looks to the substance of the matter, the relation which the parties will bear to each other after the contract is executed, and if its natural effect is to encourage crime it will be avoided, no matter in what shape it may be presented. Those courts holding a contrary view say that a policy of insurance is a chose in action, and the owner may dispose of it as he pleases. But when it is asserted that the owner of property may dispose of it at his pleasure, the assertion must be taken with the qualification that he does not violate any provision of law or contravene public policy.

It is further said that because a contract is speculative, though human life be the subject of the speculation, it is not necessarily invalid; for instance, it is not unlawful to transfer an annuity or an estate in remainder after a life estate. If this reasoning be good it would validate a policy taken by one having no interest in the life insured, as well as an assignment of a policy to such a person; for it is not unlawful to grant or create an annuity, or an estate in remainder after a life estate, any more than it is to transfer one of them after it is created. Yet wager policies are almost universally held void, whilst annuities are sustained. Why this should be it is not necessary to discuss. It is sufficient that no analogy drawn from annuities or life estates can be used to uphold policies procured in violation of public policy, and hence no analogy of this kind can sustain an assignment of the same character.

The case before us is, if possible, stronger than any to which

we have referred.   Here there was a bare verbal agreement between Harper and the appellant that the latter should pay the dues and assessments—in other words, the premiums due and to fall due upon the former's life policy—in consideration of receiving, at Harper's death, the money due on the policy.   It was but little better, if anything, than a parol gift of the certificate by which the assignee was subrogated to all the right of the assignor in the certificate.   In fact, it was no more than an agreement to convey which was never executed.   Whilst such an agreement might be enforced in a court of equity, when made for a valuable consideration and a lawful purpose, it would have but little standing in such court if made for the purpose of giving the assignee an interest in the death of the assured. It is of no importance that the rules of Knights of Honor permitted benefit certificates to be transferred to persons having no insurable interest in the life of the member, and that it consented to the assignment made in this case.   No action of the lodge could change public policy, or make a contract valid which the interest of society demanded should not be enforced.   It certainly could make no agreement violative of law by which the rights of third parties could be injuriously affected.

This is not a question between the appellant and the lodge, but between him and parties who are entitled to the insurance money, if the assignment is void.   The assignment did not vitiate the policy, but was itself of no effect, and left the insurance money payable to the parties originally designated in the certificate.   From these views, our conclusion is that the transfer, having been made to one having no interest in the life of Thomas C. Harper, and upon no other consideration than the payment of premiums by the transferee, was void and against public policy, and the insurance money was payable to the original beneficiaries of the certificate.   The court did not err in sustaining the special demurrer which reached this point. There is no objection made here to the judgment so far as it allowed the plaintiff below to recover the money advanced by him in the payment of premiums, and his right to this need not be considered.   There is no error in the judgment, and it is affirmed.

*Affirmed.*