MAGNUSSEN et al. v. OCEAN S. S. CO.
OF SAVANNAH et al.

No. 227, Docket 20542.

Circuit Court of Appeals, Second Circuit.

June 3, 1947.

Abraham M. Fisch, of New York City, for plaintiffs-appellants.

Davis Polk Wardwell Sunderland & Kiendl, of New York City (William C. Cannon and Matthew V. Stepsis, both of New York City, of counsel), for defendant-appellee.

Before SWAN, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Plaintiffs are "attendants" on defendant's non-self-propelled lighters used for storage and carriage of cargo within the Port of New York. They brought suit, under § 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207, for overtime compensation and liquidated damages. Defendant pleaded exemption, under § 13 (b) (2) of the Act, 29 U.S.C.A. § 213(b) (2), which provides that the maximum hour provisions shall not apply with respect to "any employee of an employer subject to the provisions of §§ 1–27 of Title 49," i. e., part I of the Interstate Commerce Act. On the basis of this exemption provision, the court below granted defendant's motion for summary judgment.

Defendant operates a steamship line between Savannah and Boston, and also services New York and New York lighterage points as well as other ports with which we need not here concern ourselves. There is some controversy as to whether defendant's carriage or shipment is wholly by water or partly by water and partly by rail, but for the purposes of this appeal from the summary judgment, we assume that the carriage was wholly by water, that being the state of facts most favorable to the plaintiffs.

All of the capital stock in defendant corporation is owned by Central of Georgia Railway Company, which is in turn controlled by the Illinois Central Railroad Company. After the enactment of the Panama Canal Act of August 24, 1912, 37 Stat. 560, 566, 567, c. 390, § 11, making it unlawful for any interstate railroad carrier after July 1, 1914 to own, operate, control or have any interest whatsoever by stock ownership or otherwise in any common carrier by water with which such railroad may compete for traffic, unless authorized by the I. C. C. to continue such ownership or control, the Central of Georgia and Illinois Central on March 2, 1914 filed with the I. C. C. an application for permission to continue their ownership and control of defendant corporation. Juris-

78

diction was vested in the Commission to determine whether or not a carrier came within the provisions of § 11, and such determination was made final by the express terms of the statute. After a hearing on the application, the Commission found that Central of Georgia and Illinois Central had such an interest in the Ocean Steamship Company as is defined by § 11, and granted them permission to continue their control and operation of the steamship company. The latest extension of this license to control was granted in 1938, and is still in effect.

Section 11 of the Panama Canal Act also provided that, if any such permission is granted by the Commission, "the rates, schedules, and practices of such water carrier shall be filed with the I. C. C. and shall be subject to the act to regulate commerce and all amendments thereto in the same manner and to the same extent as is the railroad or other common carrier controlling such water carrier or interested in any manner in its operation." In 1920 these provisions were incorporated in § 5 (10), (11) and (12) of the Interstate Commerce Act, 49 U.S.C.A. § 5(10), (11) and (12), and still later became paragraphs (19), (20) and (21) of the same section. The language quoted above appeared in § 5(21). It did not appear in paragraphs (14), (15) or (16) of § 5, as revised in 1940, although those paragraphs substantially incorporated the other provisions of § 11 of the Panama Canal Act.[1] However,

1 Title 90 U.S.C.A. § 5, reads:

"(14) Notwithstanding the provisions of paragraph (2), from and after the 1st day of July 1914, it shall be unlawful for any carrier, as defined in section 1(3), or (after September 18, 1940) any person controlling, controlled by, or under common control with such a carrier to own, lease, operate, control, or have any interest whatsoever (by stock ownership or otherwise, either directly, indirectly, through any holding company, or by stockholders or directors in common, or in any other manner) in any common carrier by water operated through the Panama Canal or elsewhere with which such carrier aforesaid does or may compete for traffic or any vessel carrying freight or passengers upon said water route or elsewhere with which said railroad or other carrier aforesaid does or may compete for traffic; and in case of the violation of this provision each day in which such violation continues shall be deemed a separate offense.

"(15) Jurisdiction is hereby conferred on the Commission to determine questions of fact, arising under paragraph (14), as to the competition or possibility of competition, after full hearing, on the application of any railroad company or other carrier. Such application may be filed for the purpose of determining whether any existing service is in violation of such paragraph and may pray for an order permitting the continuance of any vessel or vessels already in operation, or may pray for an order under the provisions of paragraph (16). The Commission may on its own motion or the application of any shipper institute proceedings to inquire into the operation of any vessel in use by any railroad or other carrier which has not applied to the Com-

mission and had the question of competition or the possibility of competition determined as herein provided. In all such cases the order of said Commission shall be final.

"(16) Notwithstanding the provisions of paragraph (14), the Commission shall have authority, upon application of any carrier, as defined in section 1(3), and after hearing, by order to authorize such carrier to own or acquire ownership of, to lease or operate, to have or acquire control of, or to have or acquire an interest in, a common carrier by water or vessel, not operated through the Panama Canal, with which the applicant does or may compete for traffic, if the Commission shall find that the continuance or acquisition of such ownership, lease, operation, control, or interest will not prevent such common carrier by water or vessel from being operated in the interest of the public and with advantage to the convenience and commerce of the people, and that it will not exclude, prevent, or reduce competition on the route by water under consideration: Provided, That if the transaction or interest sought to be entered into, continued, or acquired is within the scope of paragraph (2) (a), the provisions of paragraph (2) shall be applicable thereto in addition to the provisions of this paragraph: And provided further, That no such authorization shall be necessary if the carrier having the ownership, lease, operation, control, or interest has, prior to September 18, 1940, obtained an order of extension under the provisions of paragraph (21) of this section, as in effect prior to such date, and such order is still in effect. Feb. 4, 1887, c. 104, Part I, § 5, 24 Stat. 380 as amended."

paragraph (16) provides that "no * * * authorization shall be necessary if the carrier having the ownership, lease, operation, control, or interest has prior to September 18, 1940, obtained an order of extension under the provisions of paragraph 21 of this section as in effect prior to such date, and such order is still in effect."

Plaintiffs argue that the 1940 revision of § 5 eliminated the provision of paragraph (21) which placed water-carriers owned by rail-carriers under the jurisdiction of the I. C. C. But this is certainly not true as to water-carriers licensed prior to 1940 (as was defendant) since § 5 paragraph (16) specifically preserves the status of a water-carrier owned by a rail-carrier in cases where the latter has obtained an order of extension under the provisions of former paragraph (21). It follows that the defendant, Ocean Steamship Company, is "an employer subject to the provisions of §§ 1–27 of Title 49," and consequently was properly found to be exempt from the provisions of § 7 of the Fair Labor Standards Act.

Affirmed.