**KAUFMAN et al. v. BLACKMAN et al.**

No. 14305.

Court of Civil Appeals of Texas. Dallas.
Feb. 9, 1951.

On Rehearing April 6, 1951.

Further Rehearing Denied May 11, 1951.

Mohrle, Oster & Kaufman, of Dallas, for appellants.

Saner, Jack & Sallinger and Jno. N. Harris, Jr., all of Dallas, for appellees.

BOND, Chief Justice.

This is an action in bill of interpleader for summary judgment instituted by The Praetorians, a fraternal benefit Association, to determine who is entitled to receive a fund deposited into Court under a death benefit certificate issued by the Association to Dora Gottlieb, payable at death to Eunice Blackman, beneficiary (appellee here).

In its petition The Praetorians alleged and the record shows that The Praetorians is a fraternal benefit society, incorporated, existing, and doing business under and by virtue of the laws of the State of Texas, Chapter 8, Title 78, Art. 4820 et seq., Vernon's Texas Rev.Civ.St.; that on or about March 28, 1931, on application of Dora Gottlieb, it issued a benefit certificate No. 222749 in the sum of $2,000 on her life, with Eunice Blackman beneficiary; which certificate among other things states as follows: "That the certificate, the charter or articles of incorporation, the Constitution and laws of The Praetorians, and the application herefor, and the medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between The Praetorians and the insured".

The interpleader further alleged that by reason of the misstatement of age on the part of the insured in her application for the insurance, there is due and owing on said certificate the sum of $1,454.50 which it tendered into court as belonging either to Eunice Blackman, the named beneficiary, or to the children of Sam T. Kaufman, deceased (appellants), by virtue of the assignment.

The benefit certificate, copy of which is attached to the interpleader's petition, is made payable to Eunice Blackman, beneficiary, the daughter of Dora Gottlieb, subject to the right of change of beneficiary by the insured and subject to the other provisions therein named. One of the provisions, pertinent here, is: "The beneficiary or beneficiaries named in this certificate have no vested interest in same, and may be changed at any time by the insured making written request on The Praetorians' form therefor and filing the same at its home office and furnishing this certificate for endorsement of said change thereon."

The certificate appears to have been dated April 6, 1931.

On or about March 10, 1941, the insured Dora Gottlieb executed, signed, and notarized an assignment of the aforesaid certificate to Sam T. Kaufman, a copy of which assignment on March 12, 1941, was filed with the interpleader (the insurer) and attached to the certificate. It reads as follows: "Absolute Assignment of Policy. State of Texas, County of Dallas. Know All Men By These Presents: For and in consideration of the sum of One Dollar to me in hand paid, and for other valuable consideration, the receipt whereof is hereby acknowledged, I hereby sell, assign, transfer, set over and convey to Sam T. Kaufman whose post-office address is 301 Fidelity Bldg., Dallas, Texas, all my right, title and interest in and to Policy No. 222749, issued on the life of Dora Gottlieb, by The Praetorians, of Dallas, Texas, and all moneys due or to become due and payable under the same, together with full and complete authority to exercise any and all options, benefits and rights as provided in said policy, and all benefits accrued or to accrue under and by virtue of the terms, covenants or conditions thereof, inclusive of the absolute right to surrender said policy and to receive and collect the cash surrender value thereof, without notice to or consent of the assignors or either of them, and at the sole option and/or election of the assignee; and for the same consideration I do also, for my heirs, ex-.ecutors and administrators, guarantee the validity and sufficiency of the foregoing assignment to the above named assignee, his heirs, executors, administrators, successors or assigns; and his title to said policy will forever warrant and defend. The assignee is authorized to receive, collect and receipt for any money or thing of value due or to become due under said policy, or as provided thereby, as fully and completely as the assignors, or either of them, might or could do if this assignment had not been made, hereby releasing The Praetorians of and from all responsibility with reference to the application thereof and of and from all other and further liability by reason of the payment so made. In witness whereof, I have hereunto set my hand this 10th day of March, 1941. /s/ Dora Gottlieb. (Notarized by Certificate) Execute In Triplicate Attach one copy to policy, one to Company and policyholder."

The Constitution and Laws of The Praetorians, Article XXI, provides:

"Section 1. The beneficiary named in any application made by the insured may include the wife, any relative, fiance, business associate, trustee, charitable institution, persons dependent upon the insured or to the estate of the insured or *any persons, interests or entity not forbidden by law*. (Emphasis ours.)

"Section 2. If the policy holder desires to change beneficiary, or beneficiaries, he shall deliver his policy to the cashier of his Council, or direct to the Home Office of The Praetorians, together with a properly executed written application for such change on forms prepared by The Praetorians."

The claim of appellants (the children of the assignee, Sam T. Kaufman) is grounded upon the assignment and the applicable terms of the certificate and the Constitution and Laws of the Society; the claim of appellee Eunice Blackman upon her rights as named beneficiary in the certificate in consonance with the findings of the trial court as hereinafter related.

The record evidence is not in dispute. The assignee, Sam T. Kaufman, died on March 10, 1941; the insured, Dora Gottlieb, died some eight years later, on November 10, 1949, without making any change in the named beneficiary or in the assignment to Sam T. Kaufman. Eunice Blackman remained the named beneficiary and Sam T. Kaufman the assignee at the time of insured's death. Neither the assignee nor his children were related in any degree to the insured and there is no evidence that any of them had or hold a valid subsisting debtor claim against the insured, or that the assignment was given as security for any debt due the assignee by the insured.

On trial without a jury, the court entered judgment in favor of the named beneficiary, Eunice Blackman, for the fund tendered into court; released the interpleader from all liability under the certificate, allowing it $125 as reasonable attorney fees; and divided the court costs equally between appellants and appellee.

To which judgment the appellants excepted and duly perfected this appeal; and here present appropriate points of error germane to their contentions, supra, attacking the judgment as having no support in law and evidence. Appellee counters to sustain her contentions, and cross assigns error to the effect that all costs should have been taxed against the appellants.

The trial court at request of appellants filed findings of fact substantially as above related; and conclusions of law as follows: (1) That the assignment to Sam T. Kaufman is not effective as a change of beneficiary, the Bylaws of the Association providing for such change not having been complied with. (2) That no debt having been established from Dora Gottlieb to Sam T. Kaufman, there can be no recovery by reason of the assignment of the proceeds of the certificate. (3) That Eunice Blackman is entitled to the proceeds of the certificate. And (4) that the court costs should be taxed equally against both claimants.

The law of life insurance in this State, where the change of beneficiary is reserved in policy or certificate, is that during the lifetime of the insured the beneficiary named in the policy has no vested interest therein,—only an expectancy; and that a new beneficiary of the beneficial interest in the policy or certificate may be substituted without consent of the named beneficiary. If the right of change in beneficiary is reserved and the named beneficiary has no vested interest under the terms of the certificate, in absence of law to the contrary the insured has the inherent right to sell, assign, or give away his own property. An insurance certificate with all its present and future contractual benefits is property, a chose in action, and assignable agreeable to the conditions fixed by the insurance carrier under its policy, Constitution and Laws, and such other conditions as not forbidden by the laws of the State.

The rules of fraternal benefit societies or associations are regulated and controlled by statute, Chapter 8, Title 78, Arts. 4820–4859e, exempt from all provisions of the insurance laws applicable to stock and mu-

tual insurance companies. Any fraternal society or association organized and carried on solely for the mutual benefit of its members and their beneficiaries, not for profit, Art. 4820, supra, is governed by the laws of such society or association; and such fraternal organization may enter into contracts in such form and grant such benefits as its laws may authorize, and make pertinent provisions for the payment of such grants and benefits. Art. 4824, subsec. 2. Article 4831, supra, provides: "Any person may be admitted to beneficial, or general, or social membership in any society in such manner and upon such showing of eligibility as the laws of the society may provide, and any beneficial member may direct any benefit to be paid to such person or persons, entity, or interest as may be permitted by the laws of the society; provided, that no beneficiary shall have or obtain any vested interest in the said benefit until the same has become due and payable in conformity with the provisions of the contract of membership, and the member shall have full right to change his beneficiary, or beneficiaries, in accordance with the laws, rules, and regulations of the society. * * *"

In Wirtz v. Sovereign Camp W. O. W., 114 Tex. 471, 268 S.W. 438, our Supreme Court holds that the rights, powers and obligations of fraternal benefit societies are determined by the particular rules of law applicable to such societies; and the legality of their action is not to be tested by rules which apply to commercial insurance organizations. The laws of the society with reference to the insured, the beneficiary, and third persons, should govern agreeable to the revised statutes relating to fraternal benefit societies; and the construction, interpretation, and effect given to ordinary contracts not prohibited by the certificate, the Constitution and Laws of the society, and the revised statutes of this state, must be applied to contracts of beneficial associations. Such contracts are to be construed to carry out the intention of the parties in the light of their accepted meaning and legal import.

In the case of Castillo v. Canales, 141 Tex. 479, 174 S.W.2d 251, 253, the Supreme Court had before it the question, similar as here, of the applicability of the statutes relating to fraternal associations in regard to a change of beneficial interest in a certificate issued by the Woodmen of the World life insurance society to one who had no insurable interest in the life of the insured, upon his death to collect the proceeds of such certificate. The Court in extenso reviewed the various changes in the law regulating fraternal benefit societies, and finally said:

"Prior to the amendment of Article 4831 the statutes definitely limited the beneficiaries in certificates of insurance to certain persons, and a designated beneficiary not included in the list of persons named in the statutes could not collect for himself the proceeds of a certificate naming him as beneficiary. The courts also held that it was against public policy to allow anyone to be named a beneficiary in a policy who had no insurable interest in the life of the insured, and collect the proceeds of such policy for his own benefit. Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am. St.Rep. 107; Price v. Supreme Lodge, Knights of Honor, 68 Tex. 361, 4 S.W. 633; Wilke v. Finn, Tex.Com.App., 39 S. W.2d 836. * * *

"Article 4823 of Chapter 8, Title 78, Revised Civil Statutes 1925, provides that all fraternal benefit societies in Texas shall be governed by that Chapter alone 'for every purpose.' It says that the fraternal benefit societies 'shall be governed by this law (meaning Chapter 8), and shall be exempt from all provisions of the insurance laws of this State, not only in governmental relations with the State, but for every other purpose. No law hereafter enacted shall apply to them, unless they be expressly designated therein.' * * *

"As the law now stands, any beneficial member of a fraternal benefit society 'may direct any benefit to be paid to such person or persons, entity, or interest as may be permitted by the laws of the society.'"

As the law now stands, an absolute assignment of a certificate by the insured of a fraternal benefit society, as here, evidencing the sale, assignment, set-over and

conveyance, for a consideration valuable and sufficient in law, all "right, title and interest in and to" the designated certificate, and "all moneys due or to become due and payable under the same, together with full and complete authority to exercise any and all options, benefits and rights as provided in said policy, and all benefits accrued or to accrue under and by virtue of the terms, covenants and conditions thereof," warranting title unto the assignee named therein and the assignment accepted by the society, such assignment vests in the assignee the absolute indefeasible beneficial interest in and to the certificate, —revoking the named beneficiary's expectancy as effectively as the insured might have done in a change of the beneficiary named in the policy.

In the case here it will be seen that the benefit certificate expressly provides that the named beneficiary (Eunice Blackman) had no vested interest in the certificate, and the naming of her as such beneficiary was subject to be changed at any time by the insured. The Constitution and Laws of the society expressly designate those who may be named to take under the certificate, including any persons, interest or entity *not forbidden by law*. The term "law" as therein used and as said in Castillo v. Canales, supra: "* * * ordinarily includes both the common law, as evidenced by the decisions, as well as the statutory law; but the solution of this question does not solve the problem here before us. Prior to the adoption of the statute above referred to regulating fraternal benefit societies, it was the public policy or 'law' of this State, with a few exceptions, that no one could be named as a beneficiary in a life insurance policy who did not have an insurable interest in the life of the insured. As previously stated, the Legislature had the right to change this public policy. By the statute above referred to that public policy was changed so that it then became the 'law' of this State that a member of a fraternal benefit society, with the consent of the society, as evidenced by its laws could name as beneficiary in a life insurance policy whomso-

ever he pleased, and regardless of whether the named beneficiary had an insurable interest in the life of the insured. It was the 'law' as it then existed, and with the public policy thus changed by the statute, that was referred to in the Society's by-laws, wherein it was provided in substance that any one not prohibited by the law of the State could be named as a beneficiary in a policy. When thus construed the policy is perfectly valid."

Thus, the insured having assigned the certificate as shown by the transfer quoted above, its proceeds never became vested in the appellee. Therefore appellants, as the heirs at law of the assignee, are entitled to the fund deposited in court by the interpleader.

We sustain appellants' points of error. The judgment of the trial court should be reversed, except as to the division of costs and attorney fees, and judgment here rendered in favor of the appellants for the fund thus deposited, less one-half of the costs and attorney fees taxed against them in the court below. Accordingly, the judgment is affirmed in part, reversed and rendered in part. All costs on appeal taxed against appellee.

CRAMER, Justice.

I concur in the result reached by the majority in this case. The majority correctly held that the assignment vests in the assignee the beneficial interest in and to the certificate.

The provisions of the policy as to a change of beneficiary are for the benefit of The Praetorians alone. Splawn v. Chew, 60 Tex. 532. However such provisions have been waived by The Praetorians by the filing of the interpleader suit herein.

The Praetorians could have refused to recognize the assignment but they did not.

Here, as in Splawn v. Chew, supra, the change in the beneficiary was not made in the manner provided by the policy but an ordinary assignment of the proceeds was used instead. The court in the Splawn case, supra, in substance held that the pro-

vision of the policy as to change of beneficiary could be waived by The Praetorians and they alone could have enforced it.

The majority of the states follow this rule. See Note, 135 A.L.R., p. 1040.

### On Rehearing

YOUNG, Justice.

This proceeding relates exclusively to Rule 166–A, Texas Civil Procedure (summary judgment); Eunice Blackman, beneficiary in the policy, filing motion therefor, countered by like motion on part of the heirs of assignee. The trial court upon hearing sustained the beneficiary's motion, with this Court reaching an opposite conclusion—that the blanket assignment made by assured Dora Gottlieb in her lifetime to Sam T. Kaufman constituted a change of beneficiary as a matter of law, with rendition of judgment accordingly.

■ It is hardly necessary to remark that the office of Rule 166–A is the determination of whether genuine issues of fact are presented in the record, not extending to a final determination concerning the truth of such issues. In consequence, it is our opinion on rehearing of the cause, that, under the instant facts and circumstances, no summary judgment should have been awarded to either side.

Implicit in the sworn pleading of appellee Blackman was (1) a denial that any gift was intended by terms of the assignment, and (2) a charge that aforesaid instrument, though absolute in form, was executed merely as collateral security, any debtor-creditor relationship having terminated long prior to death of assured. In her motion for rehearing (not replied to) it is asserted that assignee Kaufman was in nowise related to Dora Gottlieb who, along with the daughter beneficiary (Eunice Blackman) paid premiums on the policy during the entire period; that assured was an uneducated lady, in poor health; assignee Kaufman, an insurance agent, having written policies for her on which premiums were charged; otherwise extending financial assistance, which transactions in all probability involved an assignment of policy as collateral security.

These were material facts, which, if believed by the court or jury on final trial, would result in a rejection of the Kaufman assignment as of no validity and establishment of the named beneficiary in the policy as entitled to the proceeds thereof according to its terms.

■ Chief Justice Bond in original opinion has proceeded on the theory that no debtor-creditor relationship having been shown, the Kaufman assignment conclusively established a change of beneficiary, —in effect, a gift or sale. We should not thus prejudge the issue or foreclose appellee from looking beyond the cloak of assignment on final trial for a determination of whether it was executed, on the other hand, as collateral security for debt. Lewy v. Gillard, 76 Tex. 400, 13 S.W. 304; Cawthorn v. Perry, 76 Tex. 383, 13 S.W. 268. "The majority of courts at the present time * * * are prone to look with reluctance upon absolute assignments and hold that if the assignment, though absolute in form, was intended only as collateral security, it will have only such effect. Thus one having an equitable claim may show by parol that an apparently absolute assignment was intended as security, and such showing, whether demonstrated by written agreement or parol evidence, will be conclusive. And such evidence is admissible though contrary to the clear and unambiguous language of the assignment." Appleman, Insurance Law and Practice, Vol. 2, p. 759, sec. 1312.

■ All inferences and presumptions apparent on face of the record are consistent with appellee's theory that the Kaufman paper was not intended by the assured as effectuating a change of beneficiary; for example: (1) The form and method of change as provided by The Praetorians' Constitution and Laws, also indicated by the policy, was not followed; (2) the form of assignment, on the other hand, was one commonly incident to a commercial transaction and as collateral security for debt; and (3) absent a basis of debtor-creditor relationship between the assured and assignee, the transaction would appear as an unnatural disposition of property "It

is historical that in administering summary judgment practice, the courts have been inclined to be critical of the showing made by the moving party. Customarily he is held strictly to a *conclusive showing* that no fact issue exists and that he is entitled to judgment without further delay. Conversely, the courts accord the resisting party considerably more indulgence; the motion will be denied if it appears that a substantial fact dispute may exist, regardless of informalities or defects in the resisting party's papers." (Emphasis ours.) 22 Texas Law Review, p. 438.[1]

The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. It should be temperately and cautiously applied, "lest abuse reap nullification." Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 571.

Unquestionably, this beneficiary is entitled to a trial on the merits with full opportunity for development of her tender of a genuine issue of fact; and judgment of this Court should be merely one of reversal and remand.

For the reasons stated, our former judgment of rendition is set aside, and the judgment below is reversed and cause remanded to the trial court for a trial on the merits.

Reversed and remanded.

CRAMER, J., concurs.

BOND, C. J., dissents.

BOND, Chief Justice (dissenting on rehearing).

The summary judgment procedure provided by Rule 166–A, promulgated by our Supreme Court, can be availed of to bring an action to *final conclusion* when the pleadings and admissions, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. The function of affidavits on motion for summary judgment is to show quickly and summarily what the parties can prove at the trial of the case. Rosenblum v. Dingfelder, 2 Cir., 111 F.2d 406. The purpose of this Rule is to simplify and shorten the trial and limit the issues.

The Rule, pertinent here, provides:

"(d)  *  *  *  If on motion under this rule judgment is not rendered upon the whole case or *for all the relief asked* and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts *that appear without substantial controversy,*  *  *  *  and directing such further proceedings in the action as are just. Upon the trial of the action the facts *so specified shall be deemed established, and the trial shall be conducted accordingly.*" (Italics supplied.)

"(e)  *  *  *  Supporting and opposing affidavits shall be made on personal knowledge,  *  *  *  and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

Where, as here, it appears from the pleadings (affidavits) and the motions of the respective parties for summary judgment, and from statements of counsel, that there is no genuine issue as to any material fact; and that one or the other of the defendants is entitled to judgment as a

---

[1]. This discussion of Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. (Summary Judgment Procedure) by Hon. Tom Suggs, formerly Judge, 59th District Court, and Ione Stumberg was prior to adoption of Rule 56, supra, as 166–A by our Supreme Court. Subsequent Federal decisions however have uniformly followed the rule of construction above quoted. See Purity Cheese Co. v. Frank Ryser Co., 7 Cir., 153 F.2d 88; Magnussen v. Ocean S. S. Co., 2 Cir., 162 F.2d 77.

matter of law, courts are required to enter judgment forthwith; and such judgment is a final judgment in absence of any controversial issue shown. Creel v. Lone Star Defense Corp., 5 Cir., 1949, 171 F.2d 964. And, too, where the trial court had before it motion and countermotion for summary judgment, basing their respective claims only upon conflict concerning the *decisive conclusion* drawn from the undisputed facts in the record, a summary judgment rendered is a final judgment. Fox v. Johnson & Wimsatt, 1942, 75 U.S.App.D.C. 211, 127 F.2d 729.

Courts of Civil Appeals are strictly appellate and must accept the transcript of the record for the determination of all issues involved before the trial court. Such courts have no such power dehors the record to reverse a judgment of the trial court and remand the cause for new trial. Motion for rehearing, as here, upon factual issues not presented in the trial court, either in pleadings, affidavits, or proof, and not acted upon by such court, is not within the purview of an appellate court for review. In matters of controversy, not duly presented by assignments of error to the action of the trial court, the appellate courts are without power to go outside the record to base conclusions. Summary proceedings under the Rule, supra, was not intended to be a medium for the appellate court to determine abstract questions of law, nor, upon adverse decisions, to grant the losing party a new trial, solely and only to enable him to plead and prove another and different lawsuit not presented to the trial court, thus resolving factual issues outside the aggrieved appealing party's motion for summary judgment and granting him a new trial.

In the case here, as reflected by the unanimous opinion heretofore rendered by this court, with concurring written opinion by our Mr. Justice Cramer (which now becomes the dissenting opinion), it will be seen that The Praetorians (plaintiff) filed bill of interpleader alleging that the intervening defendant, Eunice Blackman, is claiming the proceeds of the benefit certificate in question by virtue of being the daughter and beneficiary of the insured, and that the other intervening defendants (children of Sam T. Kaufman, deceased) are claiming the proceeds by virtue of the assignment; and because of the conflicting claims The Praetorians sought a determination of such alleged issues. In response to plaintiff's demand, each of the party-defendants filed answer: Eunice Blackman claiming the fund as the named beneficiary, against the heirs of the assignee, and, in affirmative pleading, *called upon them* to "establish the amount of any debt or claim that the said Sam T. Kaufman owned and held against the said Dora Gottlieb (the insured) as may have been secured by said benefit certificate." The said defendant-beneficiary further alleged "that neither the said Sam T. Kaufman nor his heirs were in any manner or degree related to the said insured, Dora Gottlieb, nor had either of them any insurable interest in the life of said defendant's mother (the insured); and that a valid assignment could not have been made unto the said Sam T. Kaufman except by assignment as security for debt of the said insured." On the other hand, the other defendants (children of Sam T. Kaufman, deceased) filed answer, pertinent here, that they are entitled to all of the proceeds of said policy perforce of the assignment to their father (See original opinion), and "under the absolute assignment" sought judgment for the fund. In due order, the defendant-beneficiary requested of assignee-defendants admission of facts. In compliance therewith, pertinent here, they gave evidence that neither they nor their father was related by affinity or consanguinity to Dora Gottlieb; that they had no knowledge of the assignment of the insurance certificate to their father prior to the death of the insured, Dora Gottlieb; that some of the records of Sam T. Kaufman came into their possession after his death; that they have no way of knowing whether or not all of the records of Sam T. Kaufman came into their possession or whether or not a debt existed; and all they know is, that the records reflect an absolute assignment to Sam T. Kaufman, made, signed and notarized by the insured, on forms of The Praetorians, and attached

to the policy. Such pleadings and admission of facts were the sum total of the record upon the trial of this cause. On the record thus presented, the defendant Eunice Blackman and her attorneys of record filed motion for summary judgment in conformity therewith; and in like manner the Kaufman heirs filed their motion for judgment; each claiming the funds in accordance with their respective pleadings. And upon such pleadings and admission of facts, the judge of the trial court made order, directed to the Clerk of her Court, reading: "To the Clerk: You will notify Eunice Blackman, defendant in the above numbered cause, and The Praetorians, plaintiff in the above numbered cause, to appear before the 14th Judicial District Court on April 7, 1950, at 9 A.M., to show cause, if any they may have, why said motion for summary judgment on behalf of the heirs of Sam T. Kaufman should not be granted." And in pursuance thereto, without further ado, the trial court sustained the defendant Blackman's motion for summary judgment, overruled that of the Kaufmans, and entered the judgment from which this appeal is prosecuted.

Turning to appellees' motion for rehearing, upon which the majority has reversed our original conclusion, it will be seen that appellees assign 18 points of error attacking only the action of this Court in holding that the assignment of the insurance policy in question as a matter of law is an absolute conveyance of all beneficial interests therein; thus leaving no interest to the named contingent beneficiary. Appellee Blackman and her attorneys assign no error to any adverse action of the trial court in rendering the summary judgment, or to this Court's opinion on any factual issue of record. The motion, aside from the assignments of error, is for "new trial," and for this Court to reverse and remand the cause on purported factual issues; or, again, for a trial on factual issue of debt against her own motion for summary judgment. They allege: "Maybe such debt, if any existed, had been paid off, without the insured obtaining a release thereon; that the assignment herein made was nothing other than a collateral security for debt,

which *was incumbent on appellants* (the Kaufmans) to allege and prove. In any event, if we be mistaken as to who is to prove the existence of such debt, then equity and good conscience demand and justify, if need be, that this cause be remanded for a *new trial,* wherein appellee *may* establish the relationship between her mother, the insured, and the assignee. On retrial hereof the facts *can be shown;* that the insured was an aged, uneducated lady, in poor health; that the assignee, an insurance agent, wrote insurance policies for her; ofttimes extended financial credit to her thereon in a pecuniary business way. Appellees' right to establish and prove, if such need be, that the assignment was merely a collateral security in favor of the assignee should not be prejudged." (Emphasis supplied.)

Courts of Civil Appeals are courts of limited jurisdiction, in the sense that they have only such powers as the Constitution, or Laws enacted thereunder, give them. Their jurisdiction is statutory, and they may not exercise any power that is not conferred upon them by law. They are not clothed with equity powers extending to civil appeals from inferior courts, except as may be presented by assignments of error to the action of a trial court; and not vested with any discretionary power or right to grant "new trials," except on assignments of error originating in and incident to the action of the trial court. Summary judgment proceedings upon which this appeal is tried and prosecuted confer no such powers on the Court of Civil Appeals. The Rule, supra, promulgated by our Supreme Court, provides an effective agency for the dispensation of justice, creating a right for litigants to have the law authoritatively set forth in reference to their rights, when no factual situation, as in the case here, is presented to the trial court. The summary judgment procedure does not represent, or have for its purpose a departure from the Court's regular routine prescribed by law, or a means to advance moot questions. Actual rights arising from the controversy are disposed of by the Court; its action is adjudication, not a device for securing

judicial opinion in regard to an alleged situation, actual or fictional.

I adhere to our former opinion; dissent from the majority reversing and remanding this cause. Appellees' motion for rehearing should be overruled.